Harold S. RAMSAY, Plaintiff, Appellant,

v.

Bessie M. COOPER, Defendant, Appellee.

No. 76–1542.

United States Court of Appeals,
First Circuit.

Argued March 4, 1977.

Decided March 30, 1977.

Russell F. Hilliard, Concord, N. H., with whom Maynard, Dunn & Phillips, Concord, N. H., was on brief, for plaintiff-appellant.

Howard M. Moffett, Concord, N. H., with whom Orr & Reno, Professional Assn., Concord, N. H., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The will of Harold Ramsay's father left a life estate in a furnished house and land to Mrs. Bessie M. Cooper, and the remainder to Ramsay. Mrs. Cooper was to "keep said property in reasonably good repair and properly insured against fire loss." [1]

The testator died in 1955. Thereafter Mrs. Cooper occupied the property. Initially she insured it against fire only to the extent of $9,000. On January 6, 1970, Harold Ramsay's attorney wrote to Mrs. Cooper that he and his client felt the buildings on the property were underinsured, and were "of the opinion that you should have not less than $25,000 coverage on the house and contents." Mrs. Cooper's attorney promptly replied, enclosing an endorsement to Mrs. Cooper's policy which increased the insurance to $25,000. In 1973, however, Mrs. Cooper unilaterally reduced the insurance to $20,000 without informing Ramsay. [2] The house burned on October 15, 1975 and was rendered uninhabitable. Ramsay commenced this action a month later, requesting payment of the insurance into court and a determination of the respective rights and interests of himself and Mrs. Cooper. Thereafter, the $20,000 in insurance proceeds was paid into an escrow account. By agreement of the parties, the property was sold for $16,200 and that amount was also paid into the escrow account, for a total of $36,200. The parties stipulated that an appraisal, done after the fire, put the value of the property before loss at $48,000.

Ramsay moved for summary judgment, contending that Mrs. Cooper's life estate had terminated as a matter of law. Mrs. Cooper cross moved for summary judgment, denying that her life estate had terminated.

1. "I give, bequeath and devise unto Mrs. Bessie M. Cooper, now of said Concord, N.H., the use, income and enjoyment of my homestead real estate, known as Nos. 58½ and 60 South Street in said Concord, N.H., and the furniture, furnishings and equipment thereon and therein, for and during the term of her natural life, but without the right to dispose of any of said property, provided that she is living at my decease and provided that she pay all taxes and charges assessed against said property during said term, and keep said property in reasonably good repair and properly insured against fire loss.

"At the death of said Mrs. Bessie M. Cooper, or if she shall not be living at my decease, then I give, bequeath and devise said real estate, and the furniture, furnishings and equipment therein and thereon, unto my son Harold S. Ramsay, to have and to hold the same to him and to his heirs forever."

2. The only explanation for the reduction appears in an affidavit of Mrs. Cooper's attorney filed in the present proceeding:

"[In 1975] when it became apparent that the insurance coverage on the subject property had been reduced from $25,000 to $20,000 in February 1973, Mrs. Cooper indicated to me that she had undertaken to reduce the fire insurance coverage on the house after reading an article or articles in the local newspaper which led her to believe that the legislature had passed legislation the effect of which was to reduce the insurance value of residential property by $5,000. It was my impression that she had been confused by newspaper accounts of a proposed $5,000 tax exemption on residential real estate for homeowners 65 years old or older . . . ."

She requested division of the $36,200 on the basis of the actuarially computed value of her life interest "less any damages which the court determines may be due the plaintiff."

The district court ruled that Mrs. Cooper's life estate had not terminated. On the issue of damages, it held that Mrs. Cooper was clearly negligent in failing to insure up to $25,000, but that Ramsay was estopped from asserting an insurable value for the building in excess of $25,000, as he had proposed that amount in 1970. On the basis of actuarial computations which are not in dispute the court divided the escrow account, awarding approximately $24,000 to Ramsay and $12,000 to Mrs. Cooper. The court's division included an award of damages to Ramsay taken from Mrs. Cooper's life share amounting to the value of Ramsay's remainder interest in $5,000.

■ We reject Ramsay's contention that Mrs. Cooper forfeited the life estate for failure to keep the property adequately insured. The district court considered the question carefully and as we agree in substance with its analysis, we need not repeat it. See, in addition to the cases it cites, *Borchers v. Taylor,* 83 N.H. 564, 569, 145 A. 666 (1929) and *Moore v. Moore,* 69 N.H. 420, 422, 45 A. 233 (1898). Appellant insists that he cannot now be adequately recompensed for the underinsurance because "[t]he fund amounts to only ¾ of the value of the building." But if the building had been properly insured and a loss had occurred, appellant would not have then received the whole value of the property. Either the property would have been restored, and the life tenant would have continued in posses-

sion of the restored property until her death, or else upon sale, the remainderman would have received, as in the present case, a part of the total proceeds based upon subtracting the actuarially computed value of the life interest. As the court below indicated, the escrow fund, while less than the whole value of the property, is sufficient to pay Ramsay the value of his interest, including damages for the loss of insurance. To pay Ramsay the entire ·fund would provide him with a windfall to the extent the fund exceeds what he would have received had there been appropriate fire insurance.

■ There is likewise no merit in the claim that Mrs. Cooper's failure to restore the property after the fire worked a forfeiture because it violated the condition in the will that she "keep said property in reasonably good repair". Her liability to the remainderman in the event of non-wilful fire damage is measured by the fire insurance provision, not by the duty to keep the property in reasonable repair. The property was sold by agreement of both parties shortly after the fire, with no contention by Ramsay then that the property be repaired.

■ A harder question is whether Ramsay's damages for underinsurance should be limited by the $25,000 figure which his attorney conveyed to Mrs. Cooper in the 1970 letter.[3] The district court ruled that Ramsay was estopped from claiming more. We agree that the life tenant was entitled to rely for a reasonable period on Ramsay's representation as to the minimal adequacy of $25,000. *See* 5 Page on Wills, § 44.13, at 427. But we do not read Ramsay's attorney's letter as indicating that

**3.** The letter, in pertinent part, read as follows:

"Mr. Ramsay and I are concerned about what seems to be a failure on your part to fulfill the obligations on which your life estate is based particularly in that the roof appears not to be in reasonably good repair and in urgent need of work on the slate.

"We also understand that the buildings are underinsured though you may have insurance about which we are uninformed.

"I shall be much obliged if you will inform me of the extent of your fire insurance coverage. Mr. Ramsay and I are of the opinion that

you should have not less than $25,000 coverage on the house and contents . . . .

"If you would like to discuss the situation with me yourself or through your attorney I shall be pleased to be of assistance."

Mrs. Cooper's attorney replied promptly, stating that he was "enclosing herewith a copy of an endorsement to Mrs. Cooper's insurance policy increasing the insurance coverage to $25,000, which should be more than adequate to cover the value of the property." No mention is made of any subsequent communication.

Ramsay absolved Mrs. Cooper for all time from a duty to go beyond that figure. We take judicial notice that the period from 1970 to 1975 was one of inflation and rising prices. The fire occurred in 1975, by which time, the insurable value of the structures on the Ramsay homestead had apparently increased.[4] We interpret the 1970 letter as calling Mrs. Cooper's attention to her duties as life tenant, one of which was to keep the property properly insured against fire loss. The fact that Ramsay and his lawyer expressed the opinion that she should not have less than $25,000 coverage is not a statement either that $25,000 would remain adequate indefinitely or that she could rely on them to tell her in the future what coverage to maintain. It is not alleged that Mrs. Cooper is incompetent and, regardless of the fact that she was of advanced years, she was obliged under the will to maintain proper insurance.

■ An estoppel requires that the benefiting party have reasonably relied to her detriment upon the representation of the estopped party. *Monadnock Regional School District v. Fitzwilliam*, 105 N.H. 487, 491–92, 203 A.2d 46 (1964). We see no reasonable basis for someone to rely on the $25,000 as reflecting the proper coverage five years later. Far from relying on the $25,000, Mrs. Cooper took it upon herself in 1973 to reduce the insurance to $20,000. Her attorney's affidavit[5] indicates that she might have been confused by a newspaper article dealing with a $5,000 reduction in taxable values for elderly persons. However, she did not first speak to Ramsay or his or her attorney, as one might have expected had she still been relying on their 1970 advice concerning $25,000. Estoppel is an equitable doctrine. We are unable to find any conduct on Ramsay's part which makes it inequitable for him to assert the right, conferred by the will, to have the life tenant properly insure the property against loss. A fire loss having occurred, Ramsay is entitled to be reimbursed to the extent the life tenant failed to carry out that duty.

■ If either party had introduced undisputed evidence showing what a proper amount of fire insurance would have been in 1975, we would simply remand to the district court so that Mrs. Cooper's liability to Ramsay would be recalculated on that basis and included in the division of the insurance and sale proceeds. However, Ramsay's consultant's report, claiming that the proper amount of insurance in 1975 was $30,674, was not sworn to nor accompanied by a proper affidavit.[6] It is therefore not competent to be considered. Fed.R.Civ.P. 56(e). Mrs. Cooper, the moving party, offered no evidence of the insurable value in 1975, relying instead on her theory that Ramsay was estopped from asserting a value higher than $25,000.[7] Since there was no evidence properly before the district court on the issue of the amount of fire insurance proper in 1975, Mrs. Cooper did not carry her burden[8] of showing that no

---

4. An economic consultant's report, prepared at the request of Ramsay and included in the record, but not sworn to or otherwise cognizable for summary judgment purposes under Fed. R.Civ.P. 56(e), states that adequate insurance based on an allowance for the increased replacement cost of the house from 1970 to 1975 had risen from $25,000 to $30,674.

5. See note 2 *supra.*

6. See note 4 *supra.*

7. Ramsay also moved for summary judgment on the theory that Mrs. Cooper had forfeited her life estate by reason of her failure to keep adequate fire insurance. However, since his cross-motion was predicated on a different legal theory from hers, his cross-motion was not a concession that evidence could not be devel-

oped to show an insurable value higher than $25,000, the figure which his attorney quoted to Mrs. Cooper in 1970. *See Redman v. Warrener*, 516 F.2d 766, 768 n.2 (1st Cir. 1975); 6 J. Moore, Federal Practice ¶ 56.13, at 56–344 (2d ed. 1976). The court was obliged, in other words, to rule that estoppel was established as a matter of law.

8. "On a motion for summary judgment, the moving party has the burden of showing 'that there is no genuine issue as to any material fact.'" *Bromley-Heath Modernization Committee v. Boston Housing Authority*, 459 F.2d 1067, 1071 (1st Cir. 1972), quoting Fed.R.Civ.P. 56(e). "As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed

dispute existed as to any material fact bearing on the measure of damages.

We affirm the district court's ruling that Mrs. Cooper has not forfeited her life estate and that there should be a division of the fire insurance and sale proceeds between life tenant and remainderman on the actuarial basis accepted by the court, with Ramsay also to receive out of Mrs. Cooper's share damages consisting of his remainder interest in the amount of insurance which should have been provided. We reverse the district court's ruling that Mrs. Cooper should only have provided $5,000 more fire insurance than the $20,000 procured and remand for proceedings to determine the amount of insurance which Mrs. Cooper should have had in 1975 under the terms of the will. *See Morton v. Browne*, 438 F.2d 1205, 1206 (1st Cir. 1971). Ramsay should receive a proportion of that additional amount in the same manner that the court computed his damages with respect to the already found $5,000 underinsurance.

*So ordered.*

in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party has the burden "whether he or his opponent would at trial have the burden of proof on the issue concerned; and [the burden] rests on him whether he is by it required to show the existence or non-existence of facts." 6 J. Moore, *supra*, ¶ 56.15[3], at 56–480–81.