Kathleen A. HADLAND, Plaintiff and Appellant,

v.

John O. SCHROEDER, Defendant and Appellee.

Civ. No. 10221.

Supreme Court of North Dakota.

Nov. 24, 1982.

H.H. Galloway, Grand Forks, for plaintiff and appellant.

A. Fred Arnason, Grand Forks, for defendant and appellee; argued by Joel F. Arnason, Grand Forks.

PAULSON, Justice.

Kathleen A. Hadland appeals from a summary judgment granted April 15, 1982, to John O. Schroeder by the District Court of Grand Forks County. The summary judgment dismissed with prejudice Hadland's claim which sought to establish the

paternity of her child, to recover expenses for the birth of her child, and for child support. We reverse the summary judgment and remand the case for proceedings not inconsistent with this opinion.

On May 21, 1978, Kathleen A. Hadland, an unmarried woman, gave birth to a male child. In August 1978, Hadland served a summons and complaint upon John O. Schroeder, alleging that Schroeder was the father of her child and seeking monetary damages for medical expenses and child support. Schroeder answered denying the allegations in Hadland's complaint. Schroeder's denial was based on the fact that he had undergone a vasectomy in April 1972, six years prior to the birth of Hadland's child.

Following an unsuccessful attempt to settle the matter, Hadland filed a note of issue on November 13, 1981. On March 11, 1982, Schroeder filed a motion for summary judgment pursuant to Rule 56 of the North Dakota Rules of Civil Procedure. The motion for summary judgment was heard by the District Court of Grand Forks County on March 24, 1982. Attached to the affidavit of Schroeder's counsel in support of the motion for summary judgment was a letter from Dr. Conrad D. Doce, the urologist who had performed the vasectomy on Schroeder in 1972. In his letter, Dr. Doce described the vasectomy and stated that two postoperative sperm counts had been performed, neither of which showed evidence of sperm cells. The first postoperative sperm count was performed June 14, 1972, six weeks after the operation. The second sperm count was performed July 6, 1978, after the birth of Hadland's child, and disclosed the

presence of no sperm cells in a random sample. Dr. Doce also stated in his letter, dated November 5, 1978, that in light of the absence of sperm cells in the two semen analyses performed, he concluded Schroeder could not possibly have fathered a child at any time during the period from June 14, 1972, to July 6, 1978.

Hadland's attorney submitted an affidavit in opposition to the motion for summary judgment, attached to which was a letter from Dr. Theodore E. Johnsrude dated September 11, 1981, stating that conception subsequent to a vasectomy is possible, as recanalization occurs in approximately 0.6% of vasectomies.[1]

In his argument at the summary judgment hearing, Schroeder presented a second letter from Dr. Johnsrude dated October 19, 1981,[2] which was sent in response to a letter from Schroeder's attorney seeking another opinion on the matter of the possibility of conception occurring following a vasectomy. In his letter of October 19, 1981, Dr. Johnsrude declined to give any opinion but stated that because he and Dr. Doce were associated in the same Clinic, he advised Schroeder's attorney to "obtain an unbiased opinion from another urologist from another city". Schroeder also argued to the court that he had been married to two different women since the date of his vasectomy and neither wife had become pregnant despite normal marital relations during the course of each marriage.

Hadland argued that Schroeder had refused to comply with an agreement to submit to a blood test and that, because Hadland and her child had submitted to blood tests, the court should order Schroeder to

1. The September 11, 1981, letter of Dr. Johnsrude to Hadland's attorney reads as follows [address, etc., omitted]:

"Regarding your letter of September 2, 1981, it is entirely possible that there is a possibility of conception subsequent to a vasectomy. Recanalization of the vas has an incidence of approximately 0.6% (Klapproth, Young, 'Vasectomy, Vas Ligation & Vas Occlusion', *Urology* 1:292, 1973).

"I trust this information is what you are seeking."

2. The October 19, 1981, letter of Dr. Johnsrude to Schroeder's attorney reads as follows [address, etc., omitted]:

"I am in receipt of your undated letter referring to a copy of a letter that I sent on September 11, 1981, to H.H. Galloway. I, likewise, received a copy of a letter from Doctor Conrad D. Doce, who is one of my associates. I have read the report of Doctor Doce. Since he and I are associated in the same Clinic, I would advise that you obtain an unbiased opinion from another urologist from another city."

submit to a blood test as well. Hadland also argued that because she had submitted a letter stating that conception following a vasectomy was possible, regardless of the opinion of Schroeder's doctor, the question of paternity was still a fact question upon which summary judgment could not be properly granted.

In its memorandum decision granting Schroeder's motion for summary judgment, the district court noted that, although not specifically stated in the pleadings, this is an action brought pursuant to the provisions of the Uniform Parentage Act, Chapter 14–17 of the North Dakota Century Code. The district court went on to note that it is impossible for a man who has had a successful vasectomy to father a child. The court also stated that it considered that the October 19, 1981, letter of Dr. Johnsrude did effectively withdraw the opinion contained in his letter of September 11, 1981, in which he stated that conception after a vasectomy is possible. Relying upon the statement contained in the letter of Dr. Doce regarding the negative results of the two sperm analyses, the fact that Dr. Doce performed both the surgery and the sperm tests, and Dr. Doce's opinion that Schroeder could not possibly be the father of Hadland's child, the district court concluded that no genuine issues of material fact remained to be tried and that Schroeder was entitled to judgment as a matter of law. The motion for summary judgment was granted and judgment was entered accordingly on April 15, 1982. From this judgment Hadland appeals.

■ In oral argument before our court there was some discussion as to whether or not Hadland had appealed from the memorandum decision of the district court, rather than from the judgment entered in the matter on April 15, 1982. We have previously held that there is no right to appeal from a memorandum decision which is not intended to be a final order. *Chas. F. Ellis Agency, Inc. v. Berg,* 214 N.W.2d 507, 510 (N.D.1974). Unless an appeal is from an appealable order or judgment, this court is without jurisdiction and must dismiss the appeal. *Chas. F. Ellis Agency, Inc. v. Berg, supra.*

Hadland's notice of appeal reads as follows:

"PLEASE TAKE NOTICE that the Plaintiff, Kathleen A. Hadland, hereby appeals to the North Dakota Supreme Court for an Order vacating the Memorandum Decision Granting Defendant's Motion for Summary Judgment and granting the Plaintiff to go forward with a trial. The said Memorandum Decision was dated March 26, 1982, and signed by Honorable Kirk Smith, and entered by the Clerk of District Court on the 15th day of April, 1982.

"Dated this 14th day of May, 1982."

■ Hadland's notice of appeal does not state that she is appealing from the memorandum decision, rather, she appeals for an order vacating the grant of summary judgment. The notice of appeal also specifies the date the judgment was entered in this matter. Although the language of Hadland's notice of appeal is somewhat unusual, we conclude that Hadland is appealing from the judgment entered April 15, 1982, and not from the memorandum decision of March 26, 1982.

Thus, the sole issue presented for our consideration is whether or not the district court properly granted summary judgment against Hadland.

In *Erickson v. Farmers Union Mut. Ins. Co.,* 311 N.W.2d 579, 580 (N.D.1981), this court restated the standard for reviewing an appeal from a summary judgment which had been previously stated in *Benson County Coop. Credit Union v. Central Livestock,* 300 N.W.2d 236, 239 (N.D.1980):

" 'On appeal from a summary judgment, the evidence must be viewed in a light most favorable to the party against whom the summary judgment was granted. [Citation omitted.] This court cannot decide disputed issues of material fact; it may only determine whether a genuine issue exists and whether the law was applied correctly. Accordingly, we reverse the grant of a summary judg-

ment motion if it appears from the record that there is an unresolved issue of material fact. Summary judgment is not appropriate if the moving party is not entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inference to be drawn from undisputed facts. [Citations omitted.] Under Rule 56(c), North Dakota Rules of Civil Procedure, we may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in determining whether or not there is a genuine issue of material fact.' "

The trial court did not properly grant summary judgment against Hadland. Viewing the evidence in the light most favorable to Hadland, we do not agree with the district court that no genuine issue of material fact exists. Under the facts presented here, Schroeder was not entitled to summary judgment as a matter of law.

Hadland contends that the district court improperly took judicial notice of the fact that it was impossible for Schroeder to father a child after having undergone a vasectomy in 1972. However, a careful reading of the district court's memorandum decision reveals that the court did not take judicial notice that it was impossible for Schroeder to father a child because he had undergone a vasectomy; but, rather, the court noticed that it was impossible for a man upon whom a successful vasectomy had been performed to father a child.[3]

■ The function of judicial notice, as provided for by Rule 201 of the North Dakota Rules of Evidence, is to remove from the stricture of formal proof facts that are not subject to reasonable dispute. Such facts must be generally known within the territorial jurisdiction of the trial court or

must be capable of accurate and ready determination by resort to reliable sources. Rule 201, N.D.R.Ev.

In the instant case, the district court took judicial notice *sua sponte* as is proper under Rule 201(c), N.D.R.Ev. The Explanatory Note to Rule 201, North Dakota Rules of Court '81 Pamph., West, states in pertinent part:

"Whenever a judge contemplates taking judicial notice of a fact on his own motion, he should clearly inform the parties of his intention and provide an opportunity for hearing of the issue. If the court fails to give prior notification, it must provide an opportunity for objection after judicial notice has been taken.

"The object of this subdivision [Rule 201(e) ] is to achieve procedural fairness. No special form of notice is required nor is there a need for a formal hearing. If the parties, in fact, are given notice and an opportunity to be heard, the requirements of this subdivision will have been satisfied."

■ Even though there is no indication in the record that the parties were informed of the district court's intention to take judicial notice, both parties were present when the court delivered its memorandum decision and, therefore, had an opportunity to object when the court took judicial notice of the fact that a man who has undergone a successful vasectomy cannot father a child. Therefore, the court did not commit error when it took judicial notice in the instant case.

■ However, notwithstanding the judicially noticed fact in this case, a genuine issue of material fact remained to be determined and Schroeder was not entitled to a judgment as a matter of law. The district

---

**3.** At page 4 of the district court's memorandum decision granting Schroeder's motion for summary judgment, the court stated:

"The Uniform Parentage Act does not reach the question of, or that has been raised here, and that is of a claim of paternity brought against a man who has been operated on for a vasectomy without attempting to infer medical knowledge beyond that of an ordinary citizen. The Court is aware that a

vasectomy is an operation used to sever what's known as a vas deferens conduit in the body of a man through which semen is passed, ultimately for fertilization in a female, and that the severing of such a passage is known to have the effect of preventing the semen of a man to be passed on to a female so as to make it impossible to have a child born of such a man in whom such an operation has been successfully performed."

court made its determination based upon the pleadings, the affidavits with attached letters, and the arguments of counsel at the summary judgment hearing. The issue of whether or not, pursuant to Rule 56(e), N.D.R.Civ.P., the district court properly considered the unsworn and uncertified letters of Dr. Doce and Dr. Johnsrude, which were attached to the affidavits of the respective parties, in making its summary judgment determination is not before the court today. While a court may generally consider only materials which would be admissible or usable at trial—unsworn, uncertified, or otherwise inadmissible documents may be considered by the court making a summary judgment determination if no timely objection is made. 10 Wright & Miller, Federal Practice and Procedure—Civil § 2722, p. 486; Rule 103(a)(1), N.D. R.Ev. In the instant case, neither party objected to the attachment of an unsworn or uncertified letter to the other party's affidavit. Therefore, the district court could properly consider the letters of Dr. Doce and Dr. Johnsrude in ruling on the motion for summary judgment.

█ The court erred when it concluded that the October 19, 1981, letter of Dr. Johnsrude did effectively withdraw the statement made in his September 11, 1981, letter expressing his medical opinion that conception after a vasectomy is possible. Dr. Johnsrude's letter of October 19 simply advised Schroeder's attorney to seek an "unbiased opinion from another urologist from another city" because Dr. Doce was his, Dr. Johnsrude's, associate in the Grand Forks Clinic. The district court also impermissibly weighed the statements contained in the letters of Dr. Doce and Dr. Johnsrude in granting summary judgment. The court noted that Dr. Doce's letter was more specific while Dr. Johnsrude's letter contained only a general reply. The court also noted that Dr. Doce performed both the vasectomy on Schroeder and also his subsequent sperm analyses; however, the court failed to note Dr. Doce's possible conflict of interest in this respect.

█ Supporting and opposing affidavits were filed in this case, with letters attached to each. The pleadings and affidavits raised the genuine fact issue of whether or not Schroeder could possibly be the father of Hadland's child. Because a genuine issue of material fact exists, Schroeder was not entitled to summary judgment as a matter of law.

█ Summary judgment is also inappropriate in this case because Hadland requested the court to order Schroeder to submit to a blood test. Section 14–17–10(1), N.D.C.C., provides, in pertinent part, that "The court may, and upon request of a party *shall*, require the child, mother, or alleged father to submit to blood tests." [Emphasis added.]

█ Schroeder contends that, because Hadland did not request the court to order blood tests until the summary judgment hearing, her request was not timely made. However, Hadland stated in oral argument that her request was not made at an earlier time because she believed Schroeder would submit to a blood test voluntarily, pursuant to a verbal agreement between the parties. Although § 14–17–10, N.D.C.C., does not specify when a party may request the court to order blood tests, we conclude that, under the circumstances of this case, Hadland's request was timely made. Hadland and her child had already submitted to blood tests at the time of the summary judgment hearing. Pursuant to § 14–17–10, N.D.C.C., the court should have, upon the request of Hadland, ordered Schroeder to submit to a blood test.

█ Furthermore, § 14–17–08, N.D. C.C., provides, in pertinent part, that

"*14–17–08. Parties.* The child *shall* be made a party to the action. If he is a minor he *shall* be represented by his general guardian or a guardian ad litem appointed by the court. The child's mother or father *may not* represent the child as guardian or otherwise. The court may appoint the director of the county social service board as guardian ad litem for the child . . . ." [Emphasis added.]

Hadland's child was not made a party to this action. Even though neither party requested that the child be made a party, the language of the statute is mandatory and, absent a request, the court on its own motion should have appointed a guardian and made the child a party to the action.

Because a genuine issue of material fact exists, because the district court should have ordered Schroeder to submit to a blood test, and because the child should have been made a party and been represented in this matter, the grant of summary judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

ERICKSTAD, C.J., and PEDERSON, SAND and VANDE WALLE, JJ., concur.