Eric STEWART, Jennifer Stewart, and their minor child, Amanda Stewart, individually and Eric Stewart as a trustee for the Workers' Compensation Bureau of North Dakota, Plaintiffs and Appellants,

v.

Robert E. RYAN, individually and Ryan Bar, Inc., D/B/A Johnny's Bar; Bill G. Ferrell, individually and D/B/A Red Dog Saloon, and The Larimore Improvement Association, Defendants and Appellees.

Civ. No. 930329.

Supreme Court of North Dakota.

July 18, 1994.

Richard A. Ohlsen, of Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for plaintiffs and appellants.

Thomas L. Zimney, of Vaaler, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendant and appellee Robert E. Ryan.

Michael J. Morley, of Morley, Morley & Light, Ltd., Grand Forks, for defendant and appellee Bill G. Ferrell.

Jay H. Fiedler, of Letnes, Marshall, Fiedler & Clapp, Ltd., Grand Forks, for defendant and appellee Larimore Improvement Ass'n.

VANDE WALLE, Chief Justice.

Eric Stewart, his wife, Jennifer, and their minor child, Amanda, ("Stewarts") appealed from a summary judgment dismissing their dram shop action against Robert Ryan, individually, and Ryan Bar, Inc., d/b/a Johnny's Bar ("Johnny's Bar"); Bill Ferrell, individually and d/b/a Red Dog Saloon ("Red Dog"); and the Larimore Improvement Association ("LIA"). We affirm in part, reverse in part, and remand for further proceedings.

I

Stewart was seriously injured on May 4, 1990, when, on duty as Chief of Police of Emerado, he was shot twice in the head by Dale Densmore while investigating an altercation involving Densmore. According to Densmore, he and a companion, Devin Johnson, began drinking at Johnny's Bar in Emerado at about 5:30 p.m. on May 4, and during that time, Johnny's Bar served him between 15 and 20 mixed drinks. Densmore and Johnson subsequently went to Larimore and stopped at two more bars, the Red Dog and LIA. According to Densmore, LIA served him one mixed drink, but Red Dog did not serve him any drinks. Densmore and Johnson ultimately returned to Johnny's Bar, where they were served additional drinks. An altercation ensued and, as Densmore was leaving, he brandished a gun. An employee at Johnny's Bar called the police, and Stewart confronted Densmore outside the bar. After a brief pursuit and struggle, Densmore shot Stewart twice in the head. Densmore subsequently pled guilty to attempted murder.

Stewarts brought this dram shop action against the defendants, alleging the defendants had all knowingly served alcoholic beverages to Densmore while he was obviously intoxicated. The defendants denied those allegations and alternatively asserted that Densmore's intentional criminal act was unforeseeable and was an intervening and superseding cause of the Stewarts' injuries.

■ The district court concluded that there were genuine issues of material fact about whether Johnny's Bar and LIA had knowingly served Densmore alcoholic beverages while he was obviously intoxicated, but that it was undisputed Red Dog had not served Densmore alcoholic beverages on May 4. The court further concluded

"that there is no material question of fact on the issue of causation, and the action of Densmore in committing the crime of attempted murder against the Plaintiff with the use of a handgun was a superseding, intervening cause of the injuries suffered by the Plaintiff, and that, as a matter of law, the conduct of Densmore was not foreseeable by the Defendants, requiring that the motion for summary judgment be granted."

Stewarts appealed.[1]

II

■ Under N.D.R.Civ.P. 56, summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion and giving that party the benefit of all favorable inferences which can reasonably be drawn from the evidence, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if only a question of

---

1. Before Stewarts appealed, they moved for reconsideration of the district court judgment. However, while that motion was pending, they appealed from the judgment of dismissal. We do not consider the Stewarts' post-judgment materials in deciding this appeal. *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D.1985); *Mahoney v. Mahoney*, 516 N.W.2d 656 (N.D.Ct.App. 1994).

law is involved. *E.g., Osterman–Levitt v. MedQuest, Inc.,* 513 N.W.2d 70 (N.D.1994). In determining if a genuine issue of material fact exists, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom. *Miller Enterprises, Inc. v. Dog N' Cat Pet Centers of America, Inc.,* 447 N.W.2d 639 (N.D.1989). A movant for summary judgment has the initial burden of establishing the absence of any genuine issues of material fact. *Sime v. Tvenge Associates Architects & Planners, P.C.,* 488 N.W.2d 606 (N.D.1992). However, "[a] party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, . . . and, if appropriate, drawing the court's attention to evidence in the record . . . raising a material factual issue, or from which the court may draw an inference creating a material factual issue." *Binstock v. Tschider,* 374 N.W.2d 81, 83 (N.D.1985), quoting *First Nat'l Bank of Hettinger v. Clark,* 332 N.W.2d 264, 267 (N.D.1983).

### III

Section 5–01–06.1, N.D.C.C., authorizes "person[s] who [are] injured by any obviously intoxicated person" to bring a dram shop action against "any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to . . . [the] obviously intoxicated person." *See Born v. Mayers et al.,* 514 N.W.2d 687 (N.D.1994) [N.D.C.C. § 5–01–06.1 creates a cause of action against a social host who disposes, sells, barters, or gives away alcoholic beverages].

Stewarts assert that they presented competent admissible evidence "by affidavit or other comparable means" to raise a genuine issue of material fact about whether Red Dog served alcoholic beverages to Densmore on May 4. We disagree.

In support of its motion for summary judgment, Red Dog relied upon Densmore's sworn affidavit, which stated that he

"did not drink anything at the Red Dog Saloon. I only walked through the Red Dog Saloon looking for Mr. Vageline. After meeting with Mr. Vageline, we then drove back to Johnny's Bar."

Red Dog also submitted a sworn statement of an employee, Leslie Cole, which stated

"Densmore and Devin Johnson did come into the bar that night, anywhere between 9:00 to 10:00 pm. They walked in the front door and stood and just looked around. I waited for them to walk up to the bar counter to see if they wanted anything, and they never did order anything, just stood there a bit more, then left. They never did return back to the Red Dog after that time. Note: I remember this so clearly, because they never did order anything."

Stewarts initially resisted the defendants' motion for summary judgment and requested a continuance to, among other things, obtain an affidavit from Johnson. The court continued the summary judgment hearing from May 24, 1993, to July 15, 1993. However, Stewarts did not submit an affidavit by Johnson and, instead, offered his June 25, 1993 unsworn statement, which said

"I traveled with Dale Densmore to the Red Dog Saloon in Larimore. We went to the Red Dog Saloon to meet with Pete Vageline and pay a bill. While at the Red Dog Saloon both myself and Dale Densmore consumed alcoholic beverages."

In *Hadland v. Schroeder,* 326 N.W.2d 709 (N.D.1982), we considered the use of unsworn and uncertified letters in the context of a motion for summary judgment. We recognized that courts may generally consider only materials which would be admissible at trial and that unsworn, uncertified, or otherwise inadmissible documents may be considered only if no timely objection is made. *See Pfeil v. Rogers,* 757 F.2d 850 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Ramsay v. Cooper,* 553 F.2d 237 (1st Cir.1977). *See generally* 10A Wright & Miller, Federal Practice and Procedure 2nd, § 2722 (1983); 6 Moore's Federal Practice, ¶ 56.22[1] (1993). In *Hadland, supra,* we concluded that the district court properly considered unsworn and uncertified letters because the parties did not object to those documents.

In this case, Red Dog objected to consideration of Johnson's unsworn statement. Dur-

ing oral argument to this court, Stewarts' counsel acknowledged that Johnson's unsworn statement was the only evidence indicating Red Dog served alcoholic beverages to Densmore on May 4.[2] Counsel also conceded that if Johnson's unsworn statement was false, Johnson could not be prosecuted for perjury. Stewarts nevertheless argue that Johnson's unsworn statement has similar reliability to an affidavit and qualifies as "other comparable means" of raising a factual issue under *Binstock, supra,* and *Clark, supra.* We disagree.

■ Johnson's unsworn statement is not a written declaration made under oath and therefore is not an affidavit under N.D.C.C. § 31-04-02. *See Pfeil, supra.* Stewarts did not present any compelling reason to justify the absence of an affidavit by Johnson, and, other than their initial request for a continuance, which was granted, they did not request additional time under N.D.R.Civ.P. 56(f), to present an affidavit by Johnson. Johnson's unsworn statement was not made under penalty of perjury and does not have the similar reliability of an affidavit. It does not qualify as "other comparable means" for raising a disputed factual issue. We hold that Johnson's unsworn statement is insufficient to raise a genuine issue of material fact about whether Red Dog served alcoholic beverages to Densmore on May 4. We affirm the summary judgment dismissal of Red Dog.

## IV

Stewarts assert that, under the dram shop and comparative fault statutes, the district court erred in concluding, as a matter of law, that Densmore's intentional criminal act was a superseding, intervening cause which was unforeseeable to the defendants. Our analysis of this issue involves the interpretation of the dram shop and the comparative fault statutes.

■ In 1987, the Legislature amended our dram shop law, N.D.C.C. §§ 5-01-06.1 and 5-01-09,[3] and also enacted the compara-

---

2. The record on appeal also includes an affidavit submitted by Stewarts' counsel, which stated:

"My investigation of the facts concerning where Dale Densmore was served alcoholic beverages on May 4, 1990 reveals a conflict in the recollection of various witnesses. Some of the witnesses we have interviewed, namely Devin Johnson, have indicated that Dale Densmore was drinking and visiting with Mr. Pete Vageline in the Red Dog Saloon in Larimore and that he only 'walked through' the Larimore Improvement Association Bar. Other witnesses, namely Pete Vageline, Valerie McMahan and Dale Densmore have indicated that Dale Densmore was visiting and drinking with Mr. Vageline in the Larimore Improvement Association Bar and he only 'walked through' the Red Dog Saloon."

Counsel's affidavit merely summarized Johnson's unsworn statement and other evidence. We recently disapproved the practice of an attorney filing a factual affidavit on behalf of a client. *Sargent County Bank v. Wentworth,* 500 N.W.2d 862, 869 fn. 4 (N.D.1993). *Cf. Luithle v. Taverna,* 214 N.W.2d 117 (N.D.1973) [affidavits of counsel shall be made on personal knowledge and shall affirmatively show counsel is competent to testify about the matters stated therein].

3. Section 5-01-06.1, N.D.C.C., provides:

"*Claim for relief for fault resulting from intoxication.* Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32-03.2-02 against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32-21-02. No claim for relief pursuant to this section may be had on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or personal representatives; nor may a claim for relief be had on behalf of an adult passenger in an automobile driven by an intoxicated person or on behalf of the passenger's estate or personal representatives."

Section 5-01-09, N.D.C.C., provides:

"*Delivery to certain persons unlawful.* Any person knowingly delivering alcoholic beverages to a person under twenty-one years of age, except as allowed under section 5-02-06, or to a habitual drunkard, an incompetent, or an obviously intoxicated person is guilty of a class A misdemeanor, subject to sections 5-01-08, 5-01-08.1, and 5-01-08.2."

The prior law, N.D.C.C. §§ 5-01-06 and 5-01-09, provided:

"*5-01-06. Recovery of damages resulting from intoxication.* Every spouse, child, parent, guardian, employer, or other person who is injured by any intoxicated person, or in consequence of intoxication, has a claim for relief against any person who caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained, and in the event death ensues, the survivors of the decedent are

tive fault provisions in N.D.C.C. Chapter 32–03.2.[4] *See* 1987 N.D.Sess.Laws chs. 95 and 404. The dram shop amendments explicitly incorporated the modified comparative "fault" provisions of N.D.C.C. § 32–03.2–02. The effect of the enactment of the comparative fault provisions was to significantly revise tort liability in this state to shift the focus from traditional doctrines to the singular, inclusive concept of fault. *Champagne v. United States*, 513 N.W.2d 75 (N.D.1994); *Erickson v. Schwan*, 453 N.W.2d 765 (N.D.1990). Section 32–03.2–02, N.D.C.C., clearly replaced the concept of joint and several liability with several allocation of damages among tortfeasors in proportion to the fault of those who contributed to an injury. *See Kavadas v. Lorenzen*, 448 N.W.2d 219 (N.D.1989). Section 32–03.2–03, N.D.C.C., also requires the comparison of several types of fault for purposes of allocating damages in proportion to the amount of fault attributable to the persons who contributed to the injury. However, the issue in this case involves the effect of the 1987 legislation on a dram shop cause of action.

 In construing the 1987 legislation, our duty is to ascertain the intent of the Legislature. *E.g.*, *County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D.1985). The Legislature's intent must be sought initially from the language of the statutes. *Id.* Words in statutes must be given their plain, ordinary, and commonly understood meaning. *Id.* Statutory provisions must be considered as a whole with each provision harmonized, if possible. *District One Republican Committee v. District One Democrat Committee*, 466 N.W.2d 820 (N.D.1991). In interpreting statutory provisions, every effort must be made to give each word, phrase, clause, and sentence meaning and effect. *Id.*

 In construing the dram shop amendments, we also recognize that dram shop laws are sui generis. *Feuerherm v. Ertelt*, 286 N.W.2d 509 (N.D.1979). At common law, there was no tort liability for selling or giving liquor to an able-bodied person, because drinking the liquor, not the furnishing of it, was the proximate cause of any subsequent injury. 45 Am.Jur.2d, *Intoxicating Liquors*, §§ 553, 554 (1969). In *Feuerherm, supra*, this court said that our prior dram shop law created an entirely new cause of action in which liability was imposed upon

---

entitled to damages defined in section 32–21–02."

"*5–01–09. Delivery to certain persons unlawful.* Any person delivering alcoholic beverages to a person under twenty-one years of age, an habitual drunkard, an incompetent, or an intoxicated person is guilty of a class A misdemeanor, subject to the provisions of sections 5–01–08, 5–01–08.1 and 5–01–08.2."

4. At the time of Stewarts' injuries, Section 32–03.2–02, N.D.C.C., provided, in part:

"Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering. The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering. When two or more parties are

found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault. Under this section, fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, and failure to avoid injury."

Section 32–03.2–01, N.D.C.C., provides:

"As used in this chapter, 'fault' includes acts or omissions that are in any measure negligent or reckless towards the person or property of the actor or others, or that subject a person to tort liability or dram shop liability. The term also includes strict liability for product defect, breach of warranty, negligence or assumption of risk, misuse of a product for which the defendant otherwise would be liable, and failure to exercise reasonable care to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault."

a finding of a violation of the statute and not upon a finding of fault in the sense of wrongful intent or negligent conduct. *See Iszler v. Jorda,* 80 N.W.2d 665 (N.D.1957). Dram shop laws were enacted for remedial purposes, and as this court indicated in *Iszler, supra,* should be construed to advance those remedial purposes and to suppress the mischief of dram shop violations. *See also Feuerherm, supra.*

▬ When the 1987 legislation is harmonized to give meaning to each word and phrase and to effectuate those remedial purposes, it plainly grants persons injured by an obviously intoxicated person a dram shop claim for relief under the comparative fault guidelines against persons who knowingly sell alcoholic beverages to the intoxicated person while that person is obviously intoxicated. N.D.C.C. § 5–01–06.1. The dram shop amendments specifically incorporate the requirement of N.D.C.C. § 32–03.2–02, for allocation of fault among all persons "who contributed to the injury." Sections 32–03.2–01 and 32–03.2–02, N.D.C.C., expressly define "fault" in terms of "negligence," "reckless or willful conduct," and "dram shop liability." That definition indicates that negligence remains a separate theory from dram shop liability, and contemplates that negligence, willful conduct, and dram shop liability are all integrated for the allocation of fault among those "who contributed to the injury." *Compare Feuerherm, supra* [under prior dram shop law, comparative negligence principles were not applicable to dram shop action]. The Legislature has therefore recognized that a person's willful or criminal conduct does not automatically extinguish dram shop fault and, instead, is an integrated part of the allocation of fault among those "who contributed to the injury." Creating uncertainty, however, is N.D.C.C. § 32–03.2–01, which says that "[l]egal requirements of causal relation apply both to fault as the basis for liability and to contributory fault." However, the Legislature did not define the "[l]egal requirements of causal relation" and that language does not indicate any purpose other than to retain the existing jurisprudence but apply it to the basis for liability and to contributory fault.

Our prior dram shop law, *see* fn. 3, provided two different grounds for recovery of damages: (1) injury "by any intoxicated person"; or (2) injury "in consequence of intoxication." *Ross v. Scott,* 386 N.W.2d 18 (N.D. 1986); *Meshefski v. Shirnan Corp.,* 385 N.W.2d 474 (N.D.1986); *Iszler v. Jorda,* 80 N.W.2d 665 (N.D.1957). In our decisions involving recovery of damages by persons injured "in consequence of intoxication," we have sustained jury instructions to the effect that the dram shop violation caused or contributed to the intoxication and that the intoxication contributed to and was a proximate cause of an accident involving the intoxicated person. *Ross, supra; Iszler, supra. See also Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D.1975).

▬ However, in *Meshefski, supra,* we reviewed a jury instruction in a case involving an altercation between two persons served by a bar. One of the persons, Leal, killed the other person, Meshefski, with a knife, and Meshefski's parents brought a dram shop action against the bar. A jury found for the bar. We reversed, concluding the trial court erred in giving the following instruction:

"'Before you can consider the question of damages you must first decide if Defendant sold alcoholic beverages to either Leal or Meshefski while they were intoxicated and that such intoxication caused Meshefski's death. If you decide such was not the case your work is completed and you will return a verdict for the Defendant....'"

*Meshefski,* 385 N.W.2d at 476. We held that, in a case involving injuries inflicted by an affirmative act of an intoxicated person, it was error to instruct the jury that in order to find the defendant liable, the jury must find that the "intoxication caused" the injury. *Id.* Our decision was limited to cases involving recovery by persons injured "by any intoxicated person" and turned on the language of the instruction that "intoxication caused" the injury. *Compare Ross, supra.* However, *Meshefski* did not eliminate the requirement that a dram shop violation must have contributed to the intoxicated person's intoxication

and that the plaintiff's injury must have been inflicted by the intoxicated person.

■ The 1987 dram shop amendments retained the ground for recovery for persons "injured by an obviously intoxicated person." In the absence of a contrary definition by the Legislature and to advance the remedial purpose of the dram shop law to protect the public from dram shop violations, we construe the "[l]egal requirements of causal relation" for dram shop actions to retain the causation requirements from *Meshefski*, *i.e.*, the dram shop violation must have contributed to the obviously intoxicated person's intoxication and the plaintiff's injury must have been inflicted by the intoxicated person. *But cf.* NDJI–Civil 370 ["In order to establish (dram shop) liability, plaintiff must also prove: ... 2. The intoxication was a proximate cause of the [injuries] death."] We construe N.D.C.C. § 5–01–06.1 to specify the conduct necessary to establish a dram shop violation, *i.e.*, "fault," and the "[l]egal requirements of causal relation" in N.D.C.C. §§ 32–03.2–01 and 32–03.2–02 to retain those causal requirements for purposes of allocating fault among those "who contributed to the injury."

The special concurrence concludes that the Legislature intended that "basic tort principles of causation apply" and that the term "legal requirements of causal relation" should be construed "as simply incorporating the basic tort principles of proximate causation."

But that is an enigmatic analysis. The common law gave no remedy for the sale of intoxicating liquor, either on the theory that it was a direct wrong, or on the ground that it was negligence which would impose a legal liability on the seller for damages resulting from the intoxication. *Hyba v. C.A. Horneman, Inc.*, 302 Ill.App. 143, 23 N.E.2d 564 (1939). The rationale for that rule is that the drinking of the liquor, not the wrongful sale, is the proximate cause of injuries subsequently received by the purchaser. 45 Am.

Jur.2d, *Intoxicating Liquors* § 553 (1969). *See Iszler v. Jorda, supra.*

The issue of proximate cause in dram shop cases was explained in *Thompson v. Wogan*, 309 Ill.App. 413, 33 N.E.2d 151, 152 (1941):

"... where an action is brought for damages for the affirmative act of an intoxicated person the courts are practically unanimous in holding it is unnecessary to show the intoxication was the proximate cause of the injury, but where the action is based on the clause 'in consequence of the intoxication,' or its equivalent, it has usually been held necessary to prove the intoxication proximately caused the damage."

The current law, N.D.C.C. § 5–01–06.1, retains the language "injured by any obviously intoxicated person" which, according to *Thompson*, requires no showing of proximate cause, and deletes the words "in consequence of the intoxication," which *Thompson* construes as requiring a showing of proximate cause.

Thus, the special concurrence adopts a view that basic tort principles apply to dram shop law, including proximate cause, but except for dram shop acts, there is no common law tort liability because the serving of intoxicating liquor is not the proximate cause of an injury. That would be an absurd result, one which we do not believe the Legislature intended.

■ However, we also recognize that some injuries may be so far removed from a dram shop violation that, as a matter of law, dram shop vendors should not be liable for those injuries. *See Vesely v. Sager*, 95 Cal. Rptr. 623, 486 P.2d 151 (1971). We construe the "[l]egal requirements of causal relation" to preclude dram shop liability for cases in which there is a superseding, intervening cause which breaks the causal link between the dram shop vendor's fault and the injuries.[5] We thus consider whether Densmore's criminal act was, as a matter of law, a superseding, intervening cause sufficient to

---

5. Although those concepts involve some negligence principles, because the Legislature has recognized that "dram shop liability" and "negligence" represent two different kinds of "fault," we decline to adopt pure negligence principles for all aspects of dram shop actions. *See Feuer-*

herm v. Ertelt, 286 N.W.2d 509 (N.D.1979) [dram shop action is sui generis and imposes liability on finding of violation of statute and not upon a finding of fault in the sense of wrongful intent or negligent conduct].

break the causal link between the defendants' alleged dram shop fault and Stewarts' injuries.

■■ An intervening cause must be both independent and unforeseeable. Lang v. Wonnenberg, 455 N.W.2d 832 (N.D.1990). This court has generally held that the determinations of whether certain conduct is a superseding, intervening cause is a question of fact. Champagne v. United States, supra; McLean v. Kirby Co., 490 N.W.2d 229 (N.D. 1992); Lang, supra; Roquette v. North American Van Lines, Inc., 187 N.W.2d 78 (N.D.1971); Wolff v. Light, 156 N.W.2d 175 (N.D.1968); see Kenna v. So–Fro Fabrics, Inc., 18 F.3d 623 (8th Cir.1994). See also Jones v. Ahlberg, 489 N.W.2d 576 (N.D.1992); Knorr v. K–Mart Corp., 300 N.W.2d 47 (N.D. 1980); Moum v. Maercklein, 201 N.W.2d 399 (N.D.1972).

In Champagne, supra, 513 N.W.2d at 81 (citations omitted), we recently considered the comparison of a suicide victim's "fault" with that of a doctor undertaking a duty of medical care toward that victim:

"Moreover, when a patient's suicide is a foreseeable consequence of the medical provider's negligent care, the act of suicide cannot be deemed a superseding intervening cause.... To relieve a defendant of the responsibility for the consequences of his negligence, an intervening cause must be one that is both independent and unforeseeable.... If Ricky's act of suicide was a reasonably foreseeable consequence of IHS's failure to provide reasonable medical care, then Ricky's suicide cannot be a superseding cause that entirely absolves IHS from responsibility by breaking the legal chain of causation."

In McLean v. Kirby Co., supra, we considered whether the rape of a potential customer by a vacuum cleaner salesman hired by a distributor was a superseding, intervening cause of the customer's injuries which precluded liability by the manufacturer of the vacuum. We held that the trial court did not err in refusing to rule, as a matter of law, that the salesman's criminal act was a superseding cause of the customer's injuries. We said that to be a legally sufficient intervening cause, the salesman's criminal act must not have been a reasonably foreseeable consequence of the situation created by the manufacturer. See also First Trust Co. v. Scheels Hardware & Sports Shop, Inc., 429 N.W.2d 5 (N.D.1988).

However, we have held that some acts are so unforeseeable and independent that, as a matter of law, they are not the legal cause of harm. In Moum, supra, this court considered whether a railroad was liable for the negligence of its deceased employee. In that case the railroad called its employee, who lived in Minot, to report to work in Harvey, and the employee encountered a blizzard enroute. The employee attempted to pass another automobile traveling in the same direction and collided with a third vehicle in which the plaintiffs were passengers. The plaintiffs alleged their injuries were proximately caused by the railroad's acts. We reversed a judgment for the plaintiffs, concluding that where the railroad's original act created a condition which was followed by the employee's independent, unforeseeable act of negligently trying to pass another car, the railroad's original negligence was remote and not the proximate cause of the plaintiffs' injuries, even if the plaintiffs' injuries never would have happened but for the railroad's original act.

■■ In this case, assuming that LIA and Johnny's Bar knowingly served Densmore alcoholic beverages while he was obviously intoxicated, as we must for purposes of summary judgment, we hold that Densmore's criminal act was not, as a matter of law, a superseding, intervening cause of their dram shop fault. Our comparative fault statutes, N.D.C.C. §§ 32–03.2–01 and 32–03.2–02, expressly define "fault" to include willful conduct and dram shop liability. By that definition, the Legislature has specifically included willful or intentional conduct in the allocation of fault in dram shop cases. The Legislature has thus built an element of foreseeability of willful and intentional acts into the dram shop law.

■■ Moreover, there cannot be any serious doubt that alcoholic beverages have different effects on individuals. Cf. Slaubaugh v. Slaubaugh, 466 N.W.2d 573 (N.D.1991)

[intoxicated person is more in need of a safe street than a sober person]. Because of those different effects of alcohol, dram shop statutes were enacted to serve the remedial purpose of imposing liability where none existed at common law. *See Iszler, supra.* As the United States Supreme Court observed in *Crowley v. Christensen,* 137 U.S. 86, 91, 11 S.Ct. 13, 15, 34 L.Ed. 620, 623 (1890), in the context of a state's authority to regulate the liquor industry[6]:

"... there are few sources of crime and misery to society equal to the dram shop, where intoxicating liquors, in small quantities, to be drunk at the time, are sold indiscriminately to all parties applying. The statistics of every State show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source. The sale of such liquors in this way has therefore been, at all times, by the courts of every State, considered as the proper subject of legislative regulation."

▮ In this case, assuming the dram shop vendors contributed to Densmore's intoxication by knowingly serving him alcoholic beverages while he was obviously intoxicated, the effect of alcoholic beverages on different individuals is such that reasonable persons could disagree about whether Densmore's criminal act was a foreseeable consequence of the situation created by the dram shop vendors. In that respect, it would defeat the remedial purpose of the dram shop law to require an obviously intoxicated person to always display violent propensities before the intoxicated person's subsequent criminal acts are not deemed a superseding, intervening cause of a victim's injuries. The foreseeability of harm built into the dram shop law and the inclusive definition of fault does not compel that result. We conclude that whether Densmore's subsequent criminal act was a superseding, intervening cause of the plaintiffs' injuries is a question of fact for the trier of fact.

**6.** In other contexts, this court has recognized the havoc alcohol-impaired drivers have caused on our highways. *E.g., North Dakota Dep't of*

### V

In support of the district court's dismissal, LIA argues that the court should have granted it summary judgment because reasonable minds could not conclude that it knowingly served alcoholic beverages to Densmore while he was obviously intoxicated. LIA argues that Stewarts presented no evidence to show that Densmore conducted himself in a manner that would have alerted LIA to his alleged obvious intoxication.

▮ For dram shop actions, "knowingly" means acting voluntarily and not because of mistake or inadvertence. *Ashlock v. Norris,* 475 N.E.2d 1167 (Ind.Ct.App.1985). *See* NDJI–Civil 373. *Cf.* N.D.C.C. § 12.1–02–02(1)(b) ["Knowingly" means "a firm belief, unaccompanied by substantial doubt."]. Generally, whether a person acted knowingly is a question of fact. *See Biesterfeld v. Asbestos Corp. of America,* 467 N.W.2d 730 (N.D.1991). Obvious intoxication is also generally a question of fact and requires that the person's intoxication be reasonably discernible or evident to a person of ordinary experience. *See Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D.1975) [relying on Minnesota case interpreting "obviously intoxicated" in the context of approving a jury instruction for service of alcoholic beverages to "intoxicated" person under our prior law]; NDJI–Civil 371.

▮ Densmore's sworn affidavit states that LIA served him one drink on May 4, thus creating a genuine issue of material fact about the element of service. According to Densmore, he had consumed between fifteen and twenty mixed drinks before going to LIA. Given the ordinarily understood appearance of a person who has consumed that much alcohol, the evidence is such that reasonable persons could reach different conclusions about whether LIA knowingly served Densmore while he was obviously intoxicated. That issue is a question of fact, and the district court did not err in refusing to grant summary judgment in favor of LIA on that issue.

*Transp. v. DuPaul,* 487 N.W.2d 593 (N.D.1992); *Kobilansky v. Liffrig,* 358 N.W.2d 781 (N.D. 1984).

We affirm the summary judgment dismissal of Red Dog, reverse the summary judgment dismissal of LIA and Johnny's Bar, and remand for further proceedings.

SANDSTROM, NEUMANN and MESCHKE, JJ., concur.

LEVINE, Justice, concurring in part and in the result.

The majority goes through an elaborate analysis before it concludes that there is no dram shop liability when a "superseding, intervening cause" breaks the causal link between dram shop fault and the injury inflicted by the intoxicated person. I agree with the conclusion, but not with the analysis. In essence, the majority first incorporates into the current version of the dram shop statute our holding in *Meshefski v. Shirnan Corp.*, 385 N.W.2d 474 (N.D.1986), in which we construed a provision of the old statute, and then backs away from *Meshefski*'s strict liability implications by discussing in detail the familiar tort-law doctrine of causation.

In *Meshefski*, we applied the old dram shop statute, which said:

"Every spouse, child, parent, guardian, employer, or other person who is injured by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained, and in the event death ensues, the survivors of the decedent are entitled to such damages as defined in section 32–21–02." NDCC § 5–01–06 (1975).

We recognized that the old statute provided two grounds for recovery: for injury "by any intoxicated person," and for injury "in consequence of intoxication." *Meshefski, supra* at 476. We distinguished the two grounds and held that the former, injury by any intoxicated person, imposed strict liability on the dram shop, and thus causation between the dram shop violation and the injury was not a necessary element of the plaintiffs' claim for

relief. *Id.* We concluded that to recover under the first ground of the old statute, the plaintiffs need not show that the intoxication was a proximate cause of their injuries, only that there was a dram shop violation and the plaintiffs were injured by the intoxicated person. *Id.* at 476–77.

In 1987, the legislature repealed section 5–01–06, and enacted a new dram shop statute, which says:

"Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32–03.2–02 against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32–21–02. No claim for relief pursuant to this section may be had on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or personal representatives; nor may a claim for relief be had on behalf of an adult passenger in an automobile driven by an intoxicated person or on behalf of the passenger's estate or personal representatives." NDCC § 5–01–06.1.

In overhauling the dram shop statute, the legislature intended to remove strict liability from dram shop actions and apply negligence principles. *See* Minutes of the House Judiciary Committee on H.B. 1474 (Feb. 2, 1987); Minutes of the Senate Judiciary Committee on H.B. 1474 (Mar. 11, 23, 1987) (statement of Sen. Stenehjem: "What this bill does is to repeal the dram shop statute as we know it, in so far as it makes a strict liability offense[,] and it transfers it into a negligence action."); Legislative Council, Bill Summary for H.B. 1474 (Mar. 27, 1987) [stating that bill "provides that comparative negligence principles apply to an action for damages resulting from intoxication"]. The statute refers to section 32–03.2–02, which adopts comparative "fault" (indicating that it covers all tort liability, not just negligence[1]), in

1. The majority's reading of the statutory definition of fault as separating negligence and dram shop liability on the basis of theory is, I think, wrong. An equally reasonable reading would be that it simply includes dram shop liability, which is not included in commonlaw torts based on

modified form, for tort claims in North Dakota. The comparative fault statute was part of a major tort reform and abolished the existing contributory negligence standard. *See* Minutes of the Senate Judiciary Committee on H.B. 1571 (Mar. 11, 1987) (testimony by Thomas F. Kelsch, attorney). Again, the legislature expressed its intent to remove dram shop actions from strict liability. Report of the Tort Reform Subcommittee of the House Judiciary Committee on H.B. 1571 (Feb. 16, 1987) (statement by Rep. Shaft).

The change from contributory negligence to modified comparative fault had no effect on proximate causation requirements. *See* NDCC § 32–03.2–01 ["Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault."]. By construing section 5–01–06.1 to retain *Meshefski*'s strict liability, *i.e.*, the plaintiff need show only that the dram shop violation contributed to the intoxication and the plaintiff's injuries were caused by the intoxicated person, the majority ignores the legislature's efforts to remove dram shop actions from strict liability and the statute's plain reference to comparative fault as the basis for liability. The majority attempts to throw in some semblance of the "[l]egal requirements of causal relation," *i.e.*, proximate cause for tort actions based on negligence or reckless or willful conduct, by precluding liability where a "superseding, intervening cause" breaks the chain of causation. The effect of the majority's roundabout analysis is to impose liability where the chain of causation between the dram shop violation and the injury is not broken by a "superseding, intervening cause." In other words, there is liability where there is proximate causation between the dram shop violation and the injury.

I see no reason to rely on a case which was based on language no longer contained in the statute to reach that result. Certainly, by creating a claim for relief in a tort action based on comparative fault, the legislature intended that the basic tort principles of causation apply. Thus, to infer that the statute imposes liability on the dram shop where

the dram shop violation contributes to the intoxicated person's intoxication, the injury is inflicted by the intoxicated person, and there is no "superseding, intervening cause" that breaks the chain of causation between the intoxication and the injury, one only need apply fundamental tort law. I would construe "[l]egal requirements of causal relation" as simply incorporating the basic tort principles of proximate causation.

Because I agree that the existence of a "superseding, intervening cause" is ordinarily a question of fact not resolvable by summary judgment, *see* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 45, at 321 (5th ed. 1984), I concur in the reversal on this issue and join in the reversal.

---

negligence or reckless or willful conduct because it is a statutorily created liability. To infer that by naming dram shop liability, the legislature intended a different theory of liability to apply to

dram shop actions goes beyond the plain meaning of the statute and is contradicted by the legislative history.