JAMES D. SWEENOR *vs.* 162 STATE STREET, INC.

Hampden.    February 9, 1972. — April 4, 1972.

Present: CUTTER, SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

*Negligence,* Intoxicated person, Bar, Contributory negligence, Assumption of risk.

Evidence in an action of tort that the plaintiff, a patron in the defendant's bar, was seated on a stool next to a patron who, although "noisy and loud," was given several drinks of whiskey while the plaintiff was there, and that when the plaintiff saw the other patron falling from his stool the plaintiff tried to catch him but he fell on the plaintiff's leg and injured it warranted findings that the plaintiff's injury was foreseeable and that the defendant was negligent toward the plaintiff [526–527]; and did not require findings that the plaintiff was guilty of contributory negligence or assumed the risk of injury [527].

TORT. Writ in the District Court of Springfield dated December 28, 1968.

On appeal to the Superior Court the action was tried before *Macaulay,* J.

*John H. Madden, Jr.,* for the plaintiff.
*John J. Brogan, Jr.,* for the defendant.

SPIEGEL, J. In this action of tort the plaintiff seeks to recover for injuries he sustained while he was a

patron in the drinking establishment of the defendant known as the "Driftwood Lounge." This case is before us on the plaintiff's exception to the trial judge's allowance of the defendant's motion for a directed verdict.

On the evening of December 8, 1967, the plaintiff entered the premises of the defendant and proceeded to the bar which "was roughly oval in shape. There were some twenty or thirty stools around the bar plus a few tables and booths near the . . . entrance. . . . [He] passed three stools and a bowling machine and sat on a stool. The other stools were filled. The bar was filled nearly to capacity with about fifty people and it was crowded and noisy. . . . There was another patron . . . sitting on the next stool to the plaintiff's left who was getting loud and one of the bartenders or the owner [several times] told him to quiet down because he was making a disturbance. He looked like he was falling asleep." "He kept putting his head down on the bar like he was sleeping." Then he would raise his head and yell, " 'where's my drink, where's my drink' in a . . . voice that could be heard all over the bar." The bartender would then give him a drink. After he "finished a drink, he [would] put his head back on the bar and his glasses would be gone and he'd say 'I want my drink,'" whereupon he would be given another drink. He was served about five drinks of whiskey while the plaintiff was there.

There was testimony by another customer at the bar that the owner said that the patron was "noisy and loud and using foul language." The owner of the bar testified that the patron sitting next to the plaintiff was "unusually loud and upsetting and was disruptive of the people there."

After the plaintiff had been at the bar about an hour or so he went to the cigarette machine and got a package of cigarettes. When he came back to the bar he saw the patron who had been occupying the stool next to him "falling over the stool." The plaintiff tried to "grab" him and, when he did, "the patron fell on the plaintiff's leg." The plaintiff was injured and other

customers helped him into a taxi which drove him home. Later he was taken to a hospital where it was learned that he had suffered a broken thigh bone. He remained in the hospital about three weeks and "went home by ambulance on December 31, 1967, in a full body cast. In mid January, 1968, he had a full leg cast applied. He was on crutches until May, 1968, and then used a cane. He was disabled until September, 1968. His leg is permanently crooked as a result of the accident."

The judge in allowing the defendant's motion for a directed verdict stated that his reason for doing so was that "the action of the person falling off the stool and injuring the plaintiff was not the kind of violence intended by the Supreme Judicial Court in *Carey* v. *New Yorker of Worcester, Inc.* . . . [355 Mass. 450]."

The language in the *Carey* case which the judge apparently relied on was as follows, at page 454: "The specific kind of harm need not be foreseeable as long as it was foreseeable that there would be harm from the act which constituted the negligence, provided it was foreseeable that there would be violence toward others." This language was included in paragraph numbered 3 of that opinion as part of our summary of the judge's charge. It is apparent that the charge was summarized because the defendant had argued two exceptions concerning it, neither of which involved the precise language here at issue. Taken in context it seems clear that the summary was not intended to be a comprehensive statement of law.

In the *Carey* case (paragraph numbered 1), in response to the defendant there contending that its motion for a directed verdict should have been allowed, we plainly set forth the duty which an operator of a bar owes to its patrons. "The defendant, as the operator of a restaurant and bar, was in possession of real estate open to the public for business purposes. It owed a duty to a paying patron to use reasonable care to prevent injury to him by third persons whether their acts were *accidental, negligent,* or *intentional.* Restatement 2d: Torts, § 344. *Rawson* v. *Massachusetts Operating Co.*

*Inc.* 328 Mass. 558. *Greco* v. *Sumner Tavern, Inc.* 333 Mass. 144" (emphasis supplied). *Id.* at 452. See *Adamian* v. *Three Sons, Inc.* 353 Mass. 498, 499. It was open to the jury in the instant case to determine whether the defendant failed to conform to this duty by failing to restrain or remove the boisterous patron, and by continuing to serve him liquor.

We likewise believe that the jury could have found that the injury to the plaintiff was foreseeable. In the *Carey* case, at 453, we observed that serving liquor to one already drunk may well make the individual unreasonably aggressive, and enhance the possibility of irrational acts. It is equally true that liquor impairs the individual's sense of balance. The jury would have been warranted in finding that the patron's falling from the barstool was predictable, and that the instinctive reaction of one in a nearby position would be to try to catch the falling patron. Involved here, the jury could have found, was a natural, human impulse to come to the aid of a fellowman. We decline to characterize the consequential harm as a "remote possibility."

It is also clear to us that the plaintiff's sitting in the bar next to the inebriated patron, his drinking beer, and finally his good Samaritan act in trying to catch the falling patron do not, as a matter of law, constitute contributory negligence or assumption of the risk. The defendant had the burden of proof on these issues, and this is not one of those "rare cases" where it can be ruled as a matter of law that these burdens have been sustained. *Halley* v. *Hugh Nawn, Inc.* 356 Mass. 28, 30, and cases cited.

*Exceptions sustained.*