**Lillian ZUEGER and LeRoy J. Kudrna, Plaintiffs and Appellants,**

v.

**Mark R. CARLSON, Defendant,**

and

**Bentley, Inc. d/b/a Boomers, Defendant and Appellee.**

Civ. No. 950205.

Supreme Court of North Dakota.

Jan. 11, 1996.

Scott K. Porsborg of Smith Bakke Hovland & Oppegard, Bismarck, for plaintiffs and appellants.

Brent J. Edison of Zuger Kirmis & Smith, Bismarck, for defendant and appellee.

SANDSTROM, Justice.

Lillian Zueger and LeRoy Kudrna appeal from a district court summary judgment dismissing their claims against Bentley, Inc., doing business as Boomers ("Boomers"). We reverse and remand for further proceedings, holding release of dram shop claims does not release all tort claims against a bar, and holding a bar owner has a duty to exercise reasonable care to prevent and stop assaults on its patrons.

I

On October 29, 1993, Zueger and Kudrna were injured in a fight at Boomers, a bar in Mandan, North Dakota. According to the complaint, Mark Carlson, an off-duty bouncer at Boomers, violently and without provocation attacked Zueger and Kudrna, causing serious and permanent injuries. Zueger and Kudrna assert Boomers failed to provide adequate security, and Boomers' employees and security personnel failed to come to their aid during the attack. Zueger and Kudrna further assert the assault was stopped only when other patrons finally restrained Carlson.

Boomers had two separate liability policies, a dram shop liability policy with Acceptance Insurance Company and a comprehensive general liability policy with Capital Indemnity Corporation. Zueger and Kudrna eventually settled their dram shop claim with Boomers and Acceptance Insurance for $10,-

000. The release specifically provided Zueger and Kudrna were releasing only their dram shop claims, and not their claims against Boomers "under Boomers' premises liability policy for any claims for negligent security, failure to provide adequate security, failure to stop an assault or any other premises liability claims."

Zueger and Kudrna subsequently brought this action on their remaining claims against Carlson and Boomers. Boomers moved for summary judgment, asserting the premises liability claims asserted were, in effect, dram shop claims by another name. The trial court concluded the dram shop statute, N.D.C.C. § 5–01–06.1, superseded all other forms of bar owner liability, and Zueger and Kudrna had failed to establish any common law duty of a bar owner to provide adequate security on its premises. The court ordered entry of summary judgment in favor of Boomers, and, after Zueger and Kudrna resolved their claims against Carlson, judgment was entered dismissing all claims against Boomers. Zueger and Kudrna appeal.[1]

■ The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. §§ 28–27–01 and 28–27–02. The appeal was timely under N.D.R.App.P. 4(a).[2]

## II

Boomers contends summary judgment was appropriate because Zueger failed to present competent admissible evidence raising a genuine issue of material fact for trial. Boomers contends Zueger was required to present affidavits or comparable evidence supporting her factual claims that Boomers provided inadequate security and failed to come to her aid.

■ If a motion for summary judgment under N.D.R.Civ.P. 56(e) is made and supported, the opposing party may not rest upon mere allegations or denials in the pleadings, but must present admissible evidence establishing a genuine issue of material fact. *Resolution Trust Corp. v. Gosbee*, 536 N.W.2d 698, 700 (N.D.1995); *Hummel v. Mid Dakota Clinic, P.C.*, 526 N.W.2d 704, 707 (N.D.1995). The moving party, however, has the initial burden of showing the absence of genuine issues of fact. *American State Bank and Trust Co. v. Sorenson*, 539 N.W.2d 59, 61 (N.D.1995); *Resolution Trust Corp., supra*, at 700. If the moving party fails to meet this initial burden, summary judgment is inappropriate even if the adverse party fails to respond with proof in opposition to the motion. *Marsh v. Binstock*, 462 N.W.2d 172, 174 (N.D.1990); *Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d 596, 598 (N.D.1987); *First State Bank of Casselton v. McConnell*, 410 N.W.2d 139, 141 (N.D.1987).

In its motion for summary judgment, Boomers did not challenge the underlying factual basis for Zueger's claims. Rather, Boomers argued the release of the dram shop claims effectively released all claims against Boomers, and allowing Zueger to pursue separate premises liability claims would be an improper splitting of causes of action. Boomers argued, in essence, that, even if all facts alleged in the complaint were true, the release extinguished all claims for relief as a matter of law.

The degree of response required of a party opposing a motion for summary judgment is set by the scope of the motion. In this case, Boomers did not challenge the factual basis for Zueger's claims, but raised purely legal issues. Because Boomers did not meet its initial burden of establishing the absence of a genuine issue of material fact, Zueger was not required to present evidence supporting

---

1. For clarity, we will refer to Zueger and Kudrna collectively as "Zueger."

2. Zueger and Kudrna have attempted to appeal from the trial court's memorandum opinion. Although the memorandum opinion itself is not appealable, an attempted appeal from an order or memorandum decision will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *See, e.g., Ehli v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 313, 314–315 (N.D.1989); *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485, 488 (N.D. 1987). Because the record contains a subsequent judgment which is consistent with the memorandum opinion, the appeal is properly before us.

the underlying factual allegations of her claims.

### III

Boomers asserts the dram shop act supersedes all common law liability of a bar owner, and therefore the release of Zueger's dram shop claims released Boomers from all potential liability.

The relevant dram shop statute provides in part:

"Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32–03.2–02 against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32–21–02."

N.D.C.C. § 5–01–06.1. Boomers argues this statute supersedes all common law liability of a bar owner, under N.D.C.C. § 1–01–06:

"*Code excludes common law.* In this state there is no common law in any case where the law is declared by the code."

We have recognized the dram shop laws are sui generis. *Stewart v. Ryan,* 520 N.W.2d 39, 45 (N.D.1994); *Day v. General Motors Corp.,* 345 N.W.2d 349, 355 (N.D. 1984). The legislature intended to create an entirely new form of liability for wrongful sale of alcohol:

" 'The liability created by the Civil Damage Act has no relation to any common law liability, or to any theory of tort. It was the intention of the legislature to create liability in a class of cases where there was no liability under the common law.' "

*Aanenson v. Bastien,* 438 N.W.2d 151, 153 (N.D.1989) (quoting *Iszler v. Jorda,* 80 N.W.2d 665, 667 (N.D.1957)).

Because the legislature intended to create a new, distinct cause of action unrelated to any recognized by the common law, it is axiomatic that the legislature did not intend thereby to supersede unrelated premises liability actions against bar owners. In similar-

ly concluding dram shop statutes do not supersede the common law premises liability of bar owners, the Supreme Court of Michigan reasoned:

"The common law duty of a liquor establishment to maintain a safe place of business for its customers is the same duty any business owes to those it invites upon its premises. The dramshop act was not intended to affect that duty. Dramshop acts were passed because under the common law it was not a tort to sell or furnish intoxicating liquor to an ordinary able-bodied man, even though as a result of his becoming intoxicated injury resulted to himself or to others. Their purpose was to fill a void in the law, not to remove the well-recognized duty of a tavern keeper to exercise due care for the welfare and safety of invited patrons."

*Manuel v. Weitzman,* 386 Mich. 157, 191 N.W.2d 474, 476 (1971) (footnote omitted). *See also Mt. Hope Inn v. Travelers Indemnity Co.,* 157 N.J.Super. 431, 384 A.2d 1159, 1162–1163 (1978).

■ Nor does the dram shop act purport, either expressly or implicitly, to cover the entire field of bar owner liability, which might provide a basis for superseding the common law. *See Board of County Commissioners v. Peterson Excavating, Inc.,* 406 N.W.2d 674, 675–676 (N.D.1987). Under these circumstances, we conclude the dram shop act does not supersede premises-based liability of a bar owner.

Boomers argues our decision in *Stewart* requires a different result. In *Stewart,* we considered the applicability of the comparative fault statutes to dram shop claims, in light of 1987 statutory amendments.

Boomers relies upon the following language in *Stewart* to support its assertion that, under the 1987 amendments, the dram shop act includes all forms of liability, including negligence and willful conduct, and supersedes common law liability of bar owners:

"When the 1987 legislation is harmonized to give meaning to each word and phrase and to effectuate those remedial purposes, it plainly grants persons injured by an obviously intoxicated person a dram

shop claim for relief under the comparative fault guidelines against persons who knowingly sell alcoholic beverages to the intoxicated person while that person is obviously intoxicated. N.D.C.C. § 5–01–06.1. The dram shop amendments specifically incorporate the requirement of N.D.C.C. § 32–03.2–02, for allocation of fault among all persons 'who contributed to the injury.' Sections 32–03.2–01 and 32–03.2–02, N.D.C.C., expressly define 'fault' in terms of 'negligence,' 'reckless or willful conduct,' and 'dram shop liability.' That definition indicates that negligence remains a separate theory from dram shop liability, and contemplates that negligence, willful conduct, and dram shop liability are all integrated for the allocation of fault among those 'who contributed to the injury.' ... The Legislature has therefore recognized that a person's willful or criminal conduct does not automatically extinguish dram shop fault and, instead, is an integrated part of the allocation of fault among those 'who contributed to the injury.' "

*Stewart* at 46.

Boomers seizes upon the language "negligence, willful conduct, and dram shop liability are all integrated" to support its assertion dram shop liability includes negligence-based premises liability, and therefore supersedes any common law claims. A careful reading of that portion of *Stewart*, however, clarifies negligence, willful conduct, and dram shop liability are integrated only "for the allocation of fault" under comparative fault, and "negligence remains a separate theory from dram shop liability." *Stewart* at 46.

Boomers' argument is premised upon the logical fallacy that, because "all fault" under comparative fault includes "dram shop," then "dram shop" must include "all fault." Besides defying logic, Boomers' argument demonstrates a misreading of *Stewart*. *Stewart* holds only that dram shop liability is to be considered in comparing fault under N.D.C.C. ch. 32–03.2. It did not imply dram shop liability extends to supersede other common law negligence actions.

We conclude the dram shop statutes do not supersede common law liability of bar owners.

IV

Boomers asserts, even if dram shop liability does not supersede common law liability, Boomers had no duty to provide security or intervene in the assault once it began. A bar owner's duty to protect its patrons from assaults by third persons appears to be an issue of first impression in this state.

It is generally settled that a bar owner, although not an insurer of the safety of its patrons, has a common law duty independent of dram shop to exercise reasonable care to protect its patrons from reasonably foreseeable injury at the hands of other patrons. *See, e.g.,* Teshima, *Tavernkeeper's Liability to Patron for Third Person Assault,* 43 A.L.R.4th 281, 288–289 (1986); 2 Landau, Martin, & Thomas, Premises Liability § 8B.04[2][c] (1995); Prosser & Keeton, Torts § 56 (5th ed. 1984); 45 Am.Jur.2d Intoxicating Liquors § 557 (1969). That duty includes a duty to promptly come to a patron's aid when an assault takes place. *See* Teshima at § 7[a]; 2 Landau, Martin, & Thomas at § 8B.04[2][c].

Liability of a bar owner for assaults upon its patrons is often premised upon Section 344, Restatement (Second) of Torts:

"§ 344. Business Premises Open to Public: Acts of Third Persons or Animals

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment f to Section 344 clarifies the extent of the duty:

"f. *Duty to police premises.* Since the possessor is not an insurer of the visitor's

safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

■ We agree with those courts which have relied upon Section 344 to conclude a bar or night club owner owes a duty to its patrons to protect them from assault by other patrons when the owner has reasonable cause to anticipate conduct on the part of third persons which is likely to endanger the safety of patrons. *See, e.g., Cotterhill v. Bafile*, 177 Ariz. 76, 865 P.2d 120, 122–123 (Ct.App.1993); *Observatory Corp. v. Daly*, 780 P.2d 462, 468–469 (Colo.1989); *Stevens v. Jefferson*, 436 So.2d 33, 34–35 (Fla.1983); *Lucht v. Stage 2, Inc.*, 239 Ill.App.3d 679, 179 Ill.Dec. 918, 922, 606 N.E.2d 750, 754 (1992); *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332, 1337 (1993); *Sweenor v. 162 State Street, Inc.*, 361 Mass. 524, 281 N.E.2d 280, 281–282 (1972); *Bencivenga v. J.J.A.M.M., Inc.*, 258 N.J.Super. 399, 609 A.2d 1299, 1302 (1992); *Stevens v. Kirby*, 86 A.D.2d 391, 450 N.Y.S.2d 607, 610 (1982); *Jones v. Oberg*, 52 Or.App. 601, 628 P.2d 773, 775–776 (1981).

■ In this case, Zueger asserts Boomers knew fights had occurred on the premises in the past, Carlson was a violent person, and Carlson himself had been involved in prior altercations at Boomers. This raises material issues of fact on the foreseeability of the assault. If the assault was foreseeable, Boomers had a duty to use reasonable care to protect its patrons from injury. Even if the specific attack was not foreseeable, Boomers had a duty once the attack began to exercise reasonable care to stop the attack.

The trial court erred in ruling as a matter of law Boomers had no duty to protect Zueger from Carlson's attack or to intervene once it began. Genuine issues of material fact remain, and summary judgment was inappropriate.

### V

Boomers asserts allowing Zueger to pursue the common law claims after release of the dram shop claims would be an improper splitting of a cause of action. This Court, however, has held the general rule against splitting a cause of action does not apply where the defendant has consented, in express words or otherwise, to splitting of the claim. *Klem v. Greenwood*, 450 N.W.2d 738, 742–743 (N.D.1990).

■ The agreement signed by Boomers releasing the dram shop claims specifically states: "This release does not include a release of Lillian Zueger and Lee Kudrna's claim against Boomers under Boomers' premises liability policy for any claims for negligent security, failure to provide adequate security, failure to stop an assault or any other premises liability claims." Boomers expressly consented to splitting the dram shop and common law claims, and cannot now assert Zueger is barred from pursuing the common law claims.[3]

---

**3.** Boomers argues there are insurmountable practical problems in attempting to try a case where the dram shop claims have been settled. Zueger responds dram shop and alcohol consumption will not be issues in the trial. Under our comparative fault law, however, it appears Boomers is entitled to have all theories of fault submitted to the jury. *See* N.D.C.C. § 32–03.2–02. Accordingly, if requested by any party, the court should provide separate interrogatories to the jury on Boomers' dram shop fault and common law fault, and the jury is free to assess separate percentages of fault for those claims. Although we recognize this procedure may be cumbersome and create confusion, any difficulties in this regard were created by the parties when they settled the dram shop claims against Boomers and expressly reserved for trial other claims against Boomers.

## VI

The judgment of the district court is reversed and we remand for further proceedings.

VANDE WALLE, C.J., and MESCHKE, LEVINE and NEUMANN, JJ., concur.