# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

May 21, 1997

Cecil W. Crowson
Appellate Court Clerk

DAWNE HEPP,                    )
                              )
     Plaintiff/Appellant,      )
                              )    Montgomery Circuit
                              )    No. C10-324
VS.                           )
                              )    Appeal No.
                              )    01A01-9604-CV-00183
JOE B'S, INC.,                )
                              )
     Defendant/Appellee,       )


APPEAL FROM THE CIRCUIT COURT FOR MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE JAMES E. WALTON, JUDGE


For the Plaintiff/Appellant:

Frank J. Runyon
Clarksville, Tennessee

For the Defendant/Appellee:

Patrick J. McHale
Brentwood, Tennessee


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a customer of a sports bar who was injured as a result of a fight between other customers. The customer filed suit in the Circuit Court for Montgomery County against the sports bar and the customer who provoked the fight. The trial court granted a summary judgment dismissing the claims against the sports bar, and the customer appealed to this court. We have determined that the summary judgment was proper and, therefore, affirm the dismissal of the customer's claims against the sports bar.

## I.

Dawne Hepp worked as a barber at Fort Campbell. On November 4, 1993, she joined two of her customers for a night of socializing in Clarksville. As the evening wore on, they decided to go to Joe B's, a sports bar and night club, to play pool. Ms. Hepp had patronized Joe B's enough to enable the owner to recognize her. There were approximately two hundred other customers in the establishment when Ms. Hepp and her companions arrived at approximately 11:30 p.m.

Ms. Hepp took a seat at a table in the bar area when she first arrived. She was alone because one of her companions had gone to the bar, while the other had gone to the restroom. She had been seated only a short time when she heard someone behind her yell "Just let it go." As Ms. Hepp turned to see what was happening, she noticed another customer trying to tell her something but could not hear what the customer was saying because of the loud music playing in the bar. At that moment, she heard the sound of a smack, and she was struck from behind. Ms. Hepp fell from her stool and was pinned on the floor underneath two fighting patrons. When someone pulled her away from the fight, she realized that her ankle had been severely lacerated.

Joe B's management broke up the fight and called for the police and medical assistance. Other customers who were infantry medics carried Ms. Hepp to a room near the kitchen where they applied a tourniquet to stop the bleeding

and performed other first aid. Ms. Hepp and one other customer were transported by ambulance to the hospital.

Ms. Hepp later moved to Tampa, Florida to work as a barber at McDill Air Force Base. In October 1994, she filed a negligence action in the Circuit Court for Montgomery County against Joe B's and Dennis Schultz, the customer who had allegedly provoked the fight that caused her injury. She alleged that Joe B's "had a duty to provide sufficient protection to the patrons . . . so that they would not be harmed" and that Joe B's "knew or should have known that things were getting out of hand because the manager . . . knew that there had been fights and disturbances at the place related to excessive drinking."

After Ms. Hepp and Joseph Michael Balthrop, the owner of Joe B's, were deposed, Joe B's moved for a summary judgment relying on the holding in *Cornpropst v. Sloan,* 528 S.W.2d 188, 198 (Tenn. 1975) that property owners were generally not liable for the criminal acts of third parties. Joe B's also asserted that the undisputed evidence demonstrated that it had taken adequate precautions to protect its customers from reasonably anticipated harm. The trial court filed its opinion on January 16, 1996, granting the summary judgment because "[t]here is no evidence to suggest that the Defendant's employees knew or should have known that the Plaintiff was likely to be injured." Accordingly, the trial court entered an order on January 26, 1996, dismissing Ms. Hepp's claims against Joe B's and certifying the order as a final judgment in accordance with Tenn. R. Civ. P. 54.02. Ms. Hepp then perfected this appeal.

## II.

At the outset, we will address two issues concerning the use of summary judgment in this case. Ms. Hepp asserts first that summary judgments are not appropriate in negligence cases, especially in cases requiring an inquiry into the defendant's state of mind. Second, she asserts that the trial court did not construe the evidence in the light most favorable to her. We find that Ms. Hepp's view of the utility of summary judgments is unduly narrow and that her opinion of the

manner in which the trial court considered the evidence supporting and opposing the summary judgment is incorrect.

## A.

Ms. Hepp asserts that summary judgments should not be used in negligence cases and, more specifically, that they should not be used when the defendant's state of mind may be a pivotal issue. Her general objections reflect an earlier reluctance to use summary judgments to dispose of negligence cases[1] that has now given way to a clear judicial policy endorsing the use of summary judgments in virtually any civil case that can be resolved on legal issues alone. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993).[2] Accordingly, the mere fact that Ms. Hepp has asserted negligence claims against Joe B's is not grounds for ruling out the use of a summary judgment if all the requirements of Tenn. R. Civ. P. 56 have been met.

In addition to her general objection, Ms. Hepp also insists that summary judgments should not be used in cases that require an inquiry into the defendant's state of mind. Citing a well-known treatise, she argues that summary judgments should not be used to resolve issues requiring an inquiry into the defendant's state of mind and that determining whether a defendant knew or should have known that its property presented some danger is a "state-of-mind" issue. Charles A. Wright, et al. *Federal Practice and Procedure* § 2729, at 228-232 (2d ed. 1983). The reluctance about summary judgments in this circumstance stems from a recognition that the witnesses' credibility is often a controlling factor in cases where state of mind is involved, Charles A. Wright, et. al., *Federal Practice and Procedure* § 2730, at 237 (2d ed. 1983), and that summary judgments should not be used to make credibility determinations. *Byrd v. Hall,* 847 S.W.2d at 212; *McDowell v. Moore,* 863 S.W.2d 418, 421 (Tenn. Ct. App. 1992).

---

[1]*Bowman v. Henard,* 547 S.W.2d 527, 530 (Tenn. 1977).

[2]The court now discourages the use of summary judgments in only workers' compensation cases. *Byrd v. Hall,* 847 S.W.2d at 210 n.1; *Berry v. Consolidated Sys., Inc.,* 804 S.W.2d 445, 446 (Tenn. 1991).

The facts surrounding Joe B's security precautions and the incident causing Ms. Hepp's injury were explored fully during the depositions of Mr. Balthrop and Ms. Hepp. Mr. Balthrop stated that he had been operating Joe B's for eight years and that there had been six or seven incidents requiring police intervention during that time. He testified that thirteen to fifteen employees were on duty at any one time and that the four full-time management employees were responsible for security. He also testified that the management employees met regularly to discuss security issues and that they had a standard procedure for managing disturbances among customers. In addition, Mr. Balthrop stated in an affidavit that his employees did not serve customers who appeared to be intoxicated and that they asked customers who got into fights to leave.

The testimony concerning the events on the evening of November 4, 1993, was likewise straightforward. Mr. Balthrop stated that he and his employees had no reason to suspect that Mr. Schultz would provoke an altercation and that they stopped the fight as quickly as they could. Ms. Hepp offered no evidence to contradict Mr. Balthrop and provided little other specific information. She did not know how the altercation started or how long it lasted. She did not know how long Mr. Schultz had been at Joe B's or whether he had been drinking. She could not describe how or when the employees broke up the fight. She stated only that a customer pulled her away from the fight and that two other customers administered first aid before the ambulance arrived. Mr. Balthrop explained that he permitted the customers to administer first aid to Ms. Hepp because they were better trained than his employees.

The credibility concerns that warrant denying a summary judgment must raise to a level higher than normal credibility questions that arise whenever a witness testifies. Any other rule would essentially prevent the courts from granting a summary judgment in any case. Thus, this court has found that credibility concerns preclude granting a summary judgment in cases where a witness's credibility has been specifically challenged, *Knapp v. Holiday Inns, Inc.,* 682 S.W.2d 936, 943 (Tenn. Ct. App. 1984), or where the record contained clear evidence of a witness's lack of credibility. *Burgess v. Harley,* 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996) (witness giving inconsistent statements).

Ms. Hepp did not challenge Mr. Balthrop's credibility in the trial court. Mr. Balthrop's deposition and affidavit are consistent, and we find nothing else in the record to provoke heightened concerns about his credibility. Thus, for the purpose of this proceeding, Mr. Balthrop's description of Joe B's security arrangements stands undisputed as does his statement that neither he nor his employees had any reason to suspect that Mr. Schultz would cause an altercation on the evening of November 4, 1993. Deciding whether Joe B's security arrangements are objectively adequate does not require an inquiry into Mr. Balthrop's credibility.

## B.

Ms. Hepp also asserts that the trial court did not properly consider the evidence offered to support and to oppose the summary judgment. Summary judgments are not substitutes for trials of disputed factual issues. *Blocker v. Regional Medical Ctr.,* 722 S.W.2d 660, 660-61 (Tenn. 1987). When considering a summary judgment, the courts must view the evidence in the light most favorable to the non-moving party and must also draw all factual inferences in the non-moving party's favor. *Mike v. Po Group, Inc.,* 937 S.W.2d 790, 792 (Tenn. 1996); *Pittman v. Upjohn Co.,* 890 S.W.2d 425, 428 (Tenn. 1994). The courts should grant a summary judgment when the undisputed facts reasonably support only one conclusion. *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

The fact that the outcome of a summary judgment proceeding is not to a party's liking does not necessarily mean that the trial court did not properly consider the evidence. The record indicates that the trial court viewed the evidence and drew all the reasonable inferences in Ms. Hepp's favor. The trial court even stated in its opinion that it was taking Ms. Hepp's deposition testimony as true. Many of the inferences Ms. Hepp argues that the court should have made are either not reasonable or are not supported by competent evidence. Accordingly, we find nothing in the record to support the claim that the trial court employed an incorrect standard of review.

## III.

Ms. Hepp's principal argument is that the trial court misapprehended the duty Joe B's owed to its customers and accordingly erred by determining that Joe B's was entitled to a judgment as a matter of law. She asserts that Joe B's should be considered an insurer of its customers' safety because of its loud music and its "history of alcohol related violence." Notwithstanding the heightened liability for criminal acts of third parties that businesses now have, we have determined the trial court's analysis was essentially correct.

## A.

When Ms. Hepp filed suit against Joe B's, businesses did not have a duty to protect their customers from the criminal acts of third parties unless they knew or should have known that the acts were occurring or were imminent. *Cornpropst v. Sloan,* 528 S.W.2d at 198. Accordingly, one of the grounds of Joe B's motion for summary judgment was that it did not have a duty to protect Ms. Hepp because it was undisputed that no one employed by Joe B's knew or had reason to know that Mr. Schultz would precipitate a fight. Ms. Hepp responded to this defense by attempting to distinguish the *Cornpropst v. Sloan* decision and by insisting that Joe B's owed its customers a higher duty of care.

The trial court's decision was not premised on the duty Joe B's owed to Ms. Hepp but rather on the question of notice. The trial court reasoned that Joe B's could be liable for the "sudden criminal acts of third persons" if it "was on notice in some manner of the imminent probability of harm to the Plaintiff." It also reasoned that notice could be provided in several ways, including a "past history of such activities to the extent that the owner would be on notice that history was likely to repeat itself" or "a heated argument over sufficient time for the owner to intervene." Employing these standards and viewing the evidence in the light most favorable to Ms. Hepp, the trial court concluded that "[t]here is no evidence to suggest that the Defendant's employees knew or should have known that the Plaintiff was likely to be injured."

After this case was appealed, the Tennessee Supreme Court departed from its holding in *Cornpropst v. Sloan* and expanded the liability of business

establishments to their customers for the criminal acts of third persons committed on the business premises. Embracing the rule in Restatement (Second) of Torts § 344 (1965), the court "impose[d] a duty upon businesses to take reasonable measures to protect their customers from foreseeable criminal attacks." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 899 (Tenn. 1996). In the court's view, an attack is foreseeable if similar acts have occurred, within a proximate time frame, "on or in the immediate vicinity of" the business premises. *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d at 902.

In addition, the court redefined a business's duty to protect its customers from the criminal acts of third parties using what it called a "balancing approach." The court explained:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

*McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d at 902. Consistent with the trend of its more recent decisions, the court also held that the scope of the business's duty was directly related to the magnitude of the foreseeable harm to its customers. *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d at 902. These new principles must guide our decision in this case even though *McClung* had not been decided when the trial court granted Joe B's motion for summary judgment.

**B.**

While businesses in Tennessee are not insurers of their customers' safety, they have the duty to protect their customers from known or reasonably anticipated dangers on their premises. *McCormick v. Waters,* 594 S.W.2d 385, 387 (Tenn. 1980); *Dawson v. Sears, Roebuck & Co.,* 217 Tenn. 72, 78, 394 S.W.2d 877, 880 (1965). Until the Tennessee Supreme Court's *McClung*

decision, a business had a duty to protect its customers only from specific criminal acts that the business knew or should have known were occurring or were about to occur. *Cornpropst v. Sloan,* 528 S.W.2d at 198. The *McClung* decision broadened a business's duty to include protecting its customers from criminal acts that could, with reasonable foreseeability, occur on its premises. *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d at 902.

While we have never been called upon to articulate the duty of businesses similar to Joe B's, courts in other jurisdictions have imposed the same general duty on these businesses that they impose on businesses in general. Accordingly, businesses that serve alcoholic beverages are not insurers of their customers' safety. *Holiday Inns, Inc. v. Shelburne,* 576 So.2d 322, 325 (Fla. Dist. Ct. App. 1991); *Davis v. Allhands,* 643 N.E.2d 856, 862 (Ill. Ct. App. 1994); *Gunter v. Village Pub,* 606 N.E.2d 1310, 1312 (Ind. Ct. App. 1993); *Zueger v. Carlson,* 542 N.W.2d 92, 96 (N.D. 1996). They have a duty, however, to exercise reasonable care to protect their patrons from injury at the hands of other customers. *Saatzer v. Smith,* 176 Cal. Rptr. 68, 71 (Ct. App. 1981); *Kimple v. Foster,* 469 P.2d 281, 284 (Kan. 1970); *Mettling v. Mulligan,* 225 N.W.2d 825, 827-28 (Minn. 1975); *Silver v. Sheraton-Smithtown Inn,* 504 N.Y.S.2d 56, 57 (App. Div. 1986). Thus, liability can arise when the business (1) allows a person on the premises with a known propensity for fighting, (2) allows a person to remain on the premises whose conduct has become obstreperous and aggressive enough to be a danger to other customer, (3) fails to take suitable precautionary measures after being warned of danger from an obstreperous person, (4) fails to stop a fight as soon as possible after it starts, (5) fails to provide a staff adequate to police the premises, or (6) tolerates disorderly conditions. *Saatzer v. Smith,* 176 Cal. Rptr. at 71-72; *Schneider v. Nectarine Ballroom, Inc.,* 514 N.W.2d 486, 487 (Mich. Ct. App. 1994); *Nevin v. Carlasco*, 365 P.2d 637, 638 (Mont. 1961).

These principles relating to the duty businesses that serve alcoholic beverages have to their customers are consistent with the Tennessee Supreme Court's expanded view of a business's liability for criminal acts occurring on its premises. They take into consideration both the specific acts of particular customers and the reasonably foreseeable disorderly conduct by third persons in

general that might endanger other customers. Accordingly, we will apply these principles to determine whether Joe B's is entitled to a judgment dismissing Ms. Hepp's claims as a matter of law.

## C.

Ms. Hepp has not claimed that Mr. Schultz had a known propensity for fighting or that Joe B's negligently allowed Mr. Schultz to patronize the bar. Her complaint asserts three negligence claims against Joe B's: first, that Joe B's employees failed to stop the fight as quickly as possible; second, that Joe B's tolerated disorderly premises by playing loud music; and third, that Joe B's failed to provide adequate staff to maintain order. Ms. Hepp has not demonstrated that she will be able to present competent, admissible proof to substantiate any of these claims at trial.

Ms. Hepp has offered no evidence concerning the fight that caused her injury. The only evidence on this matter is Mr. Balthrop's testimony that he and his employees stopped the fight as quickly as they could. In the absence of evidence to the contrary, the only conclusion that a reasonable person could draw is that the employees of Joe B's stopped the fight as quickly as they could and, therefore, that they were not negligent.

We need not tarry long with Ms. Hepp's claim that Joe B's somehow breached its duty to its customers by playing loud music. Persons patronize sports bars and night clubs for their ambiance which includes crowds, loud music, and the availability of alcoholic beverages. Based on the present state of the evidence, a jury would be required to speculate that the music somehow precipitated the fight or interfered with the employee's ability to stop the fight. Verdicts cannot be based on speculation and conjecture. Accordingly, the only conclusion that a reasonable person could draw from the present evidence is that Joe B's was not negligent by playing loud music.

Ms. Hepp's final theory is that Joe B's was negligent because it failed to provide adequate staff to maintain order. While Joe B's is not an insurer of its

customers' safety, it has a duty to take reasonable precautions to protect them from injury arising from reasonably anticipated causes. The nature and extent of these precautions depends on its past experience and the magnitude of the reasonably foreseeable harm. Thus, the pivotal issue is whether Joe B's took adequate precautions to protect its customers in light of its prior experience with disorderly conduct on its premises.

The only competent evidence concerning Joe B's prior experience with disorderly patrons and with its security measures is Mr. Balthrop's deposition and affidavit. Ms. Hepp offered a two-sentence affidavit from Tony Macias, another Joe B's customer. The trial court properly disregarded Mr. Macias's affidavit because it does not comply with Tenn. R. Civ. P. 56.05. It is irrelevant because it describes an event that occurred sixteen months after Ms. Hepp's injury and because the event is entirely dissimilar to the event involved in this case. In addition, the affidavit provides no basis for concluding that Mr. Macias is competent to testify concerning the adequacy of Joe B's security precautions.

Mr. Balthrop stated that Joe B's employees did not serve alcoholic beverages to customers who were visibly intoxicated and that they did not permit customers who engaged in fights to remain on the premises. He also explained that Joe B's had a security plan, that four management personnel were responsible for security on each shift, and that these personnel received training and conducted meetings to discuss the security arrangements. The only reasonable conclusion to be drawn from Mr. Balthrop's uncontradicted testimony concerning the incidents of disorderly conduct at Joe B's is that Joe B's had taken adequate precautions to protect its customers from the disorderly conduct of other customers.

## IV.

We affirm the summary judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Dawne Hepp and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE