Rosa F. **Norita** and Nicanor F. Norita,
Plaintiffs/ Appellees,
**v.**
Juan F. **Norita**, Crispina L. Norita,
Alejandro L. Norita, Rosa L. Norita,
Joseph L. Norita, Juan L. Norita,
Juanita L. Norita, and Lorenzo L. Norita,
Defendants/Appellants.
Appeal No. 95-021
Civil Action No. 95-0576
May 29, 1996

Submitted on Briefs April 25, 1996

Counsel for appellants: Russell H. Tansey, Saipan.

Counsel for appellees: Charles Rotbart, Saipan.

BEFORE: TAYLOR, Chief Justice, and VILLA-GOMEZ and ATALIG, Justices.

TAYLOR, Chief Justice:

■ The appellants, Juan F. Norita, his wife Crispina and their children ("Juan's family"), appeal an order restraining them from contacting the appellees, Rosa F. and Nicanor F. Norita ("Rosa and Nicanor"), or from entering certain property on which Rosa and Nicanor are living. We have jurisdiction pursuant to 1 CMC § 3102(a). We affirm.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

■ This appeal presents the following issues for our review:

I. Whether a temporary restraining order ("TRO") issued pursuant to the Family Protection Act, 8 CMC § 1221 et seq., was invalid where the trial court set it for hearing twelve days from the date of issuance. The standard of review of a trial court's grant of preliminary injunctive relief has not yet been addressed by this Court. The Ninth Circuit reviews a grant or denial of a preliminary injunction for abuse of discretion or misapplication of law. *Senate of California v. Mosbacher*, 968 F.2d 974, 975 (9th Cir. 1992). Whether a restraining order complies with the terms of the Family Protection Act is a question of law, reviewable de novo. *See Commonwealth v. Kaipat*, 2 N.M.I. 322, 327-28 (1991) (holding that correct interpretation and application of statute is question of law).

II. Whether the trial court erred in taking judicial notice of related proceedings involving the same parties pending before the court in its decision to grant a permanent injunction.[1] We review decisions of the trial court to exclude or admit evidence for abuse of discretion. *In re Estate of Dela Cruz*, 2 N.M.I. 1, 8 (1991). However, where the complaining party did not object to the judicial notice or request a hearing pursuant to Com. R. Evid.

---

[1] The brief submitted by Juan's family separates this issue into two parts, namely "[w]hether due process was violated by issuance of a preliminary or final injunction in a Family Protection Act hearing in which no evidence was taken by the court," and "[w]hether the trial court committed error by taking judicial notice of other cases involving the same family where such proceedings were not introduced in evidence." Brief for Appellants at 1. However, as discussed below, Juan's family did not object to—and the trial court did not commit plain error in—taking the judicial notice of related proceedings. *See* parts II(B) and (C), below. We therefore reject the premise of the appellants' due process claim that the trial court's injunction was based on "no evidence," and we do not consider the due process issue further.

201(e), the trial court's actions are unreviewable except on a showing of plain error. *See MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) (failure to object to judicial notice); *Dilutaoch v. C & S Concrete Block Prods.*, 1 N.M.I. 478, 485-86 (1991) (plain error); Com. R. Evid. 103(d).

## FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 1995, Rosa and Nicanor filed an ex parte application for a TRO. The accompanying affidavit alleged several incidents of physical and verbal abuse by Juan's family against Rosa and Nicanor. *See* Excerpts of Record at 3-4. The Superior Court granted the application, issuing an order that Juan's family not "contact, molest, strike, threaten, sexually assault, batter, telephone or disturb the peace of" Rosa and Nicanor. *Id.* at 5. The order further prohibited Juan's family from coming within 200 feet of the "[r]esidence and property of ROSA F. NORITA and NICANOR L. NORITA [sic] . . . Lot No. 388 - "C", Chalan Kiya, Saipan." *Id.* at 6. The order also contained a notice to Juan's family to show cause why a permanent order should not issue to "[r]estrain Defendants from physically harming Plaintiffs" and "[o]rder Defendants to stay at least 200 feet away from Plaintiffs and their residence." *Id.* at 2, 5. The trial court calendared a hearing on the order to show cause for June 7, 1995, twelve days after the date of the TRO's issuance. *Id.* at 5.

At the hearing itself, counsel for Juan's family began by requesting that the court take judicial notice of the proceedings in Civil Action No. 93-1032, as well as judicial notice of two documents described as quitclaim deeds and one purporting to revoke a special power of attorney. Transcript of Proceedings ("Transcript") at 2-3 (June 7, 1995). After receiving these documents, the trial judge instructed the parties as follows:

> Now, before we proceed, I want the parties to define the issues, the issues before this court. I can see only one issue before this court and that issue is whether or not the court continue the restraining order on, ah—against the defendants on the person—ah, property of Rosa F. Norita. This is brought pursuant to the Family Protection Act and I want to limit the issues to that Act and, ah, to the pleadings filed in this case.

*Id.* at 6. There followed a colloquy with counsel, in which counsel for Juan's family argued that they owned

half of the property which they were restrained from entering under the TRO, again referring to the documents already provided to the court and requesting judicial notice of them. *Id.* at 7-8. Counsel for Rosa and Nicanor responded that the issue of ownership need not be addressed at that hearing, because it was uncontroverted that Rosa resided on the property, and they intended to file a separate action to determine ownership. *Id.* at 8-9. After the trial judge confirmed that Rosa lived on the parcel in question, it had the following discussion with counsel for Juan's family:

THE COURT: But, you know, Mr. Tansey, this is not the first time that this court has seen this family discuss and file lawsuits against each other about—concerning this piece of property or some other properties. Now, the only issue before this court is whether or not the defendants should be restrained from bothering, harassing, molesting, disturbing the peace of Rosa F. Norita. That's all. Do you agree. That they should be—

MR. TANSEY: If the court limits it to that issue, then—

THE COURT: I'm going to limit it to that issue.

MR. TANSEY: Then it's limited to that issue.

THE COURT: All right.

MR. TANSEY: Ah, but I want to make it clear, that that has never happen.

THE COURT: What do you mean, never happen.

MR. TANSEY: It has never happen. These allegations are absolutely false. They're absolutely false[.] And, it is the real reason that Rosa isn't here,[2] because she would tell the court that they're not true, these allegations. She intended to do so.

In fact, I—just as a matter of a suggestion . . . there will be, ah, considerable conflict in testimony, um but in the end, I believe, that the court would want really to hear from Rosa. And, I believe that if Rosa comes to court . . . that the court will be satisfied what the truth is in this case and what the truth has been for years now, um with respect to the property and all of the problems and the police calls and everything else that have gone on continuously

ah, quite for [sic] some time, going back, ah to—this isn't the first time that Nicanor has caused these kind—the property, ah—these Family Protection Act documents to be filed in order to drive Juan off that land. And, he—and not only has he driven him off, he has driven tenants. He has driven Juan Norita's tenants out of their apartments.

. . . .

THE COURT: Maybe I should just take judicial notice, too, that ah this court is aware that ah, cases have been brought to court based upon family disputes and so forth. And, I can—and maybe it's wrong, but I'll take judicial notice and I'm going to order the defendants not to bother, harass, molest or disturb the peace of Rosa F. Norita on her property or anywhere else here on the island of Saipan. That's the order of this court.

MR. INOS: Thank you.

THE COURT: Do you understand me, Mr. Norita? And, everyone here?

MR. NORITA: Yes, I understand.

THE COURT: Now . . . you have lawyers. . . . If there is dispute as to who owns the property, you take it to court. All right? Now, if you're not satisfied, Mr. Tansey, do you want—do you have another issue that this court would like to address at this time?

MR. TANSEY: Well, the fact is that if we got into the whole thing, it will—it will . . . [unintelligible].

THE COURT: I understand.

MR. TANSEY: . . . Of dispute.

THE COURT: And, the court is going to have to make a final say as to who it's to believe, right?

MR. INOS: That is correct, your honor.

THE COURT: And now, without even going into the evidence in this case, for the sake of, ah, family unity in section 1221 of the Family Protection Act, the court orders the defendant, and the petitioner, not to bother, harass, disturb the peace of Rosa F. Norita. That's the order. All right. You prepare the order, Mr. Inos.

*Id.* at 11-13. The hearing then adjourned.

On June 9, 1995, the court issued an order containing the same restraining language that appeared in the TRO, and made the restraint reciprocal on both parties.

---

[2] Rosa had been subpoenaed to testify at the hearing, but did not attend. According to her counsel, she had suffered an asthma attack and was in bed at the time of the hearing. *Id.* at 4.

By its terms, the order expires one year from issuance. Excerpts of Record at 9. Juan's family timely appealed.

## ANALYSIS

### I. The Validity of the Initial TRO

 A. *Mootness*. Juan's family asks this Court to declare void the TRO issued on May 26, 1995, on the grounds that it extended past the maximum duration of ten days. Rosa and Nicanor respond that, since the order has expired, the matter is now moot. We agree. *See In re Seman*, 3 N.M.I. 57, 64 (1992); *Stewart v. Brown*, 321 S.E. 2d 738, 739 (Ga. 1984) (holding that appeal from expired temporary restraining order is moot). However, a well-established exception to the mootness doctrine allows a court to review a mooted matter if it is of public importance, is likely to recur, and is likely to become moot again prior to appellate review. *Seman*, 3 N.M.I. at 64-65; *In re Duncan*, 3 CR 383, 387-88 (N.M.I. Trial Ct. 1988) (holding that court may hear controversies "capable of repetition yet evading review").

 This exception to the rule of mootness applies in this case. First, the error claimed is a matter of public importance. Ex parte practice, and the orders which may be obtained on an ex parte basis, should be subjected to careful control by the courts. Because of its non-adversarial nature, there is always a danger of misuse of an ex parte application. At the same time, ex parte restraining orders fulfill a vital function in assuring the safety of citizens, especially in the context of the Family Protection Act.

The other two *Seman* criteria for hearing a moot case are also present. From the record, it appears that there was no extraordinary reason why the trial court calendared this matter more than ten days after the TRO was issued. From this fact we may infer that the court might set such matters for hearing beyond the ten-day limit on at least a periodic basis in the future. Lastly, absent extraordinary circumstances, there is no practical way for a party to appeal the issuance of a TRO before it expires. We will therefore proceed to consider the validity of the TRO, despite its mootness.

 B. *The Merits*. Juan's family directs the Court to Com. R. Civ. P. 65(b), and the ten-day time limit set forth there, as the basis for their claim that the TRO at issue here was impermissibly overlong. However, Rosa and Nicanor correctly respond that the Family Protection Act, 8 CMC § 1221 et seq. ("the Act"), provides more specific ex parte procedures which govern here. *Cf. Commonwealth v. Bordallo*, 1 N.M.I. 208, 216 n.10 (1990) (where a statute conflicts with a rule of court, the statute prevails). Under the hearing provision of the Act:

> (a) Within 10 days of the filing of a petition under this article, a hearing shall be held at which the plaintiff must prove the allegation of abuse by the preponderance of the evidence. The court shall advise the defendant of his or her right to be represented by counsel.

> (b) The court may enter such temporary orders as it deems necessary to protect the plaintiff from abuse upon good cause shown in an ex parte proceeding. Immediate and present danger of abuse to the plaintiff shall constitute good cause for the purposes of this section.

> (c) If a hearing under Subsection (a) is continued, the court may make or extend such temporary orders under Subsection (b) as it deems necessary.

8 CMC § 1226. The plain terms of this statute mandate that the Superior Court must calendar a hearing on a petition alleging abuse within ten days of the filing of the petition. Here, the hearing was set two days past this deadline. This was error.

 Rosa and Nicanor argue that the extra two-day period is permissible under subsection (c), which empowers the court to extend the original time period in the event of a continuance. However, there was no continuance in this case. While appellees urge this Court to interpret the statute somewhat loosely in order to allow the trial court greater flexibility in calendaring hearings in matters arising under the Act, we conclude that sound policy considerations favor a strict adherence to the letter of the statute in question. As the court in *Jurco v. Stuart*, 442 N.E. 2d 633 (Ill. App. Ct. 1982), stated in construing an Illinois injunction statute, "[a] temporary restraining order is a drastic, emergency remedy which may issue only in exceptional circumstances and for a brief duration." *Id.* at 635. To allow hearings to be calendared outside of the initial ten-day window would be to invite abuse of this exceptional remedy which allows for restraint of a party who is not present in court to tell his or her side of the story.[3] We therefore hold that the

---

[3] A potential source of confusion in this case may have been the language of the "Order to Show Cause" drafted by counsel for Rosa and Nicanor, which specified that notice of the hearing on the order had to be served on Juan's family "ten days before the hearing." Excerpts of Record at 6. The law imposes no such requirement. Indeed, 8 CMC § 1226(a), which requires that a hearing on the petition be held within ten days, is inconsistent with any supposed requirement of ten days'

TRO issued in this matter on May 26, 1995 expired at midnight of June 5, 1995, ten days after the date of its issuance.

## II. Judicial Notice

Turning to the Superior Court's order of June 9, 1995, and the hearing which preceded it, no mootness problem is presented because the restraining order remains in force until June 8, 1996. However, other procedural errors committed by counsel for Juan's family effectively preclude review of the appellants' arguments.

 A. *Failure to Provide Excerpts of Record.* The first such error is the appellants' failure to provide a transcript of the June 7, 1995, hearing as part of the excerpts of record. Com. R. App. P. 30(b)(3) requires that the excerpts of record shall include any "rulings or orders (whether written or delivered orally) sought to be reviewed." Com. R. App. P. 30(c)(1) further specifies that

> [w]hen an appeal is based upon a challenge to the admission or exclusion of evidence or any other ruling or order, but not otherwise, a copy of the relevant pages of the transcript at which the evidence, offer of proof, ruling, or order and any necessary objection are recorded should be included.

Where a party appeals from an order delivered in open court without the issuance of a written memorandum, a transcript of the proceedings (or other statement on the evidence if no transcript is available) provides the only factual basis on which we may review the matter. *See Commonwealth v. Delos Reyes*, 4 N.M.I. 340, 341-42 n.2. (1996) (holding that where record on appeal is silent as to trial court's ruling, objection to that ruling is not properly preserved for appeal).

 Here, Juan's family caused a transcript of the hearing to be prepared and placed in the file at the Superior Court. However, no relevant pages of the

---

notice of the hearing. The statutory scheme does not preclude a defending party from obtaining more time to prepare for the hearing if necessary. Either party may move for a continuance for good cause shown. In that event, subsection (c) comes into play to extend the duration of the restraining order beyond the original ten days. Contrary to the arguments of Rosa and Nicanor, see Brief for Respondents at 3, such an extension is not equivalent to allowing a plaintiff to obtain an ex parte restraining order which on its face extends beyond the statutory limit.

transcript have been submitted to this Court in the excerpts of record. The duty to assemble the record is not discharged simply by ordering a transcript. *In re Estate of Deleon Castro*, 4 N.M.I. 102, 108-09 (1994). Rather, the relevant portions of the transcript must be provided to the appellate court as part of the excerpts of record. *Id.*, 4 N.M.I. at 108. Juan's family is not proceeding pro se, but is represented here by an experienced member of the Commonwealth Bar. There is no justification for the failure to comply with Com. R. App. P. 30(b)(3) and 30(c)(1).

 B. *Failure to Object to the Proceedings Below.* Even if we overlook the failure of Juan's family to provide an adequate record on appeal, their failure to object to the trial judge's taking judicial notice of related proceedings bars our review, absent a showing of plain error. Com. R. Evid. 201(e) provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." While no Commonwealth court has construed this rule in a reported decision, courts interpreting the corresponding Federal Rule of Evidence have held that the failure to object or request a hearing to oppose judicial notice renders the court's action unreviewable on appeal. *See, e.g.*, *MacMillan Bloedel, Ltd. v. Flintkote Co.*, 760 F.2d 580, 587-88 (5th Cir. 1985) (suggesting that failure to request hearing after court took judicial notice waives matter on appeal); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990) (holding that Fed. R. Evid. 201(e) places burden on appellant to request hearing on propriety of judicial notice even after notice is taken); 1 Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 53 (2d ed. 1994) ("failure to request a hearing [under Fed. R. Evid. 201(e)] usually renders the court's decision to take judicial notice nonappealable").

A similar result obtains in cases involving analogous state rules of evidence. *See, e.g.*, *Hadland v. Schroeder*, 326 N.W.2d 709, 713 (N.D. 1982) (finding no error where parties were present when court rendered its decision taking judicial notice and did not object on record); *A & S Dist. Co. v. Providence Pile Fabric Corp.*, 563 S.W. 2d 281, 285 (Tex. Ct. App. 1978) (concluding that where appellant failed to object to opposing party's memorandum citing New York law, trial court was authorized to take judicial notice of authorities cited in memorandum). This approach is also in harmony with this Court's established doctrine that parties must make a timely and specific objection to the introduction of evidence, or the objection is waived. *See Dilutaoch*, 1 N.M.I. at 485-86.

Here, counsel for Juan's family did not object to the trial court's action at the time of the hearing, nor did he move for reconsideration or request a hearing under Com. R. Evid. 201(e) afterwards. Indeed, it was Juan's family that originally requested that the court take judicial notice of related proceedings involving the same parties. Transcript at 2-3, 7-8. After the court took judicial notice of related proceedings for a different purpose from the one counsel had proposed, counsel for Juan's family commented "[w]ell, the fact is that if we got into the whole thing, it will . . . [unintelligible] . . . of dispute," to which the judge responded "[a]nd, the court is going to have to make a final say as to who it's to believe, right?" *Id.* at 13. This exchange makes clear that the judge interpreted counsel's remark to mean that the underlying property conflict between the parties would be a matter of dispute, which the court would have to consider and adjudicate in a separate proceeding. This interpretation is consistent with the repeated efforts by counsel for Juan's family earlier in the hearing to raise the property issue, while the judge continued to ask the parties to limit their presentations to the question of disturbance of the peace. *Id.* at 7, 8, 10, 12. If counsel meant something else by his remark, it was incumbent upon him to make this clear to the judge. His failure to do so bars our review of the trial judge's action on appeal, except on a showing of plain error.

■ **C.** *Plain Error.* Com. R. Evid 103(d) provides that the failure to object to an evidentiary ruling does not preclude "taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Reversal under the plain error rule is proper only when two factors exist: substantial rights of the defendant are affected, and it is necessary to safeguard the integrity and reputation of the judicial process or to forestall a miscarriage of justice. *Commonwealth v. Peters*, 1 N.M.I. 466, 475-76 (1991).

■ Neither factor is present here. The order appealed from does not affect substantial rights of Juan's family. There has been no showing that it deprives them of a residence, of income, or of any other property rights. The trial court explicitly reserved judgment on the underlying property dispute for another forum, and there is nothing before us to suggest that the order under review here has impeded the progress of that action.

Nor did the trial court's action imperil the integrity of the judicial process. The claim of Juan's family that the restraining order was based on "no evidence" is factually incorrect. The court had before it the affidavit originally filed by Nicanor (Excerpts of Record at 3-4), supplemented with the judicial notice that other proceedings had been filed involving the same family. Judicial notice is proper in such circumstances. *See In re Zem-*

*ple,* 489 N.W.2d 818, 820 (Minn. Ct. App. 1992) (holding that judge in civil commitment hearing properly took judicial notice of prior adjudication of domestic abuse). From the record, the trial judge does not appear to have taken judicial notice of anything more than that "cases have been brought to court based on family disputes and so forth." Transcript at 12. He did not take judicial notice of the outcomes of those cases, nor of matters in evidence in those cases.[4] Rather, the court appears to have considered the pendency of these related proceedings alone, together with the allegations of Nicanor's affidavit, to be evidence of acrimony between the families sufficient to warrant a restraining order. This does not constitute plain error.

■ Nor was it plain error to take judicial notice of related court proceedings without introducing the specific records into evidence. While some authorities hold that introduction of such records is required, others allow judicial notice without such formal introduction where the matters noticed are beyond reasonable controversy. *Compare Guam Inv. Co. v. Central Bldg., Inc.*, 288 F.2d 19, 23 (9th Cir. 1961) (stating that formal introduction of related proceedings required for judicial notice) *with MacMillan Bloedel,*, 760 F.2d at 588 (holding that if related proceedings judicially noticed are beyond reasonable controversy, formal introduction of evidence is unnecessary). Here, Juan's family did not dispute at the trial court, and it does not dispute on appeal, that there have been prior cases before the Superior Court involving these same parties, or that those other cases have generated family acrimony. Since the trial court's judicial notice does not appear to have extended beyond those two facts, it was not plain error to dispense with the formal introduction into evidence of documents or files pertaining to those other proceedings.

## CONCLUSION

For the foregoing reasons, the order restraining Juan's family from disturbing the peace of or entering the place of residence of Rosa and Nicanor is hereby **AFFIRMED.**

---

[4] This fact distinguishes the circumstances here from the cases relied on by appellants (Brief for Appellants at 13-14), where courts took judicial notice of specific facts adjudicated in prior proceedings. *See M/V Am. Queen v. San Diego Marine Const. Co.,* 708 F.2d 1483, 1491 (9th Cir. 1983); *Paridy v. Caterpillar Tractor Co.*, 48 F.2d 166, 168 (7th Cir. 1931).