Cote v. Donovan                    CV-95-31-JD    01/23/97
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE


Alfred Cote, et al.

     v.                              Civil No. 95-31-JD

Patricia Donovan, et al.


                        O R D E R


     The plaintiffs, Alfred and Evelyn Cote, brought this action

under 42 U.S.C. § 1983 against the following defendants:

Patricia Donovan, the superintendent of the Rockingham County

House of Corrections; William Vahey, Gene Charron, and Kenneth

McCarron, all corrections officers and supervisors employed by

the Rockingham County House of Corrections; Paul Hollick, a

corrections officer employed by the Rockingham County House of

Corrections; and Rockingham County.  Before the court is the

defendants' motion for summary judgment (document no. 16).


                      Background[1]

     Plaintiff Alfred Cote was incarcerated at the Rockingham

County House of Corrections during November 1992.[2]  On November

_____

     [1]The facts relevant to the instant motion are either not in
dispute or have been alleged by the plaintiff.

     [2]Plaintiff Evelyn Cote is the wife of plaintiff Alfred Cote.
Because her only claim is for loss of consortium under count XI

10, 1992, he was reassigned from G-Block, a work-release block, to D-Block, a protective custody unit. He was reassigned in accordance with prison policy when the State of Illinois requested that a detainer be served on him stemming from charges lodged against him alleging that he sexually assaulted a minor. The plaintiff filed a lawsuit contesting the legality of his detainer and verbally challenged the reassignment. He asserts that defendant Vahey maliciously said "We'll see what happens to you there," when informing him of the impending transfer to D-Block.

Also assigned to D-Block at the time of the plaintiff's reassignment was inmate Alan Thibeault, who had allegedly sexually assaulted the plaintiff during a previous incarceration in 1985.[3] Upon learning of Thibeault's presence in D-Block, the plaintiff notified corrections officers about the prior assault and informed them that he feared another assault by Thibeault.[4]

---

of the complaint, this order will use the term "plaintiff" to refer to plaintiff Alfred Cote except where otherwise expressly noted.

[3]The plaintiff has no personal recollection of the alleged 1985 sexual assault, but others reported to him what transpired and he suffered physical problems in connection with the incident. He did not report the nature of the assault as sexual or the identity of his attacker to prison officials at that time.

[4]Although the plaintiff and Thibeault had been incarcerated together on G- and D-Blocks from approximately February 28, 1992,

In addition, both the plaintiff's mother and his wife, plaintiff Evelyn Cote, called the facility to notify prison officials of their concern about the plaintiff's safety. The plaintiff requested that he be transferred back to G-Block, a request corrections officers stated was against prison policy because of the detainer. Defendant corrections officer Hollick instead gave the plaintiff two other options: returning to the general prison population or being locked into his cell. The plaintiff declined both options as unacceptable to him. He attests that he also feared for his safety in the general population and being locked into his cell "wasn't a viable alternative" because "from a psychological basis, I couldn't handle that, no way," so he remained in D-Block. Objection to Motion for Summary Judgment, Ex. E, at 75-76 (document no. 18).

On November 15, 1992, inmates Thibeault and Russell Chaput threw a "snowball"[5] at the plaintiff. The plaintiff then chased the two inmates around, throwing shaving cream at them (some of which landed on others, including inmate Daniel Allen) and

---

through April 26, 1992, without incident or complaint, the plaintiff asserts that "there was no recognition of one another" during that period.

[5]A "snowball" is a ball of shaving cream wrapped in toilet paper that opens upon impact, spreading its contents on its target.

3

ultimately he wiped the shaving cream on their cell doors. Although he attests that he perceived this incident to be threatening and to presage a more serious attack, he did not inform the guard on duty of his fears and instead retired to his cell on the second tier of D-Block to work on one of his lawsuits.

Within fifteen minutes, inmate Allen entered the plaintiff's cell asking to look out the window. Thereafter, Thibeault and Chaput entered. Allen then allegedly grabbed the plaintiff from behind in a choke hold and forced him to the bed while Chaput and Thibeault tied his ankles. At this point, either Chaput and/or Thibeault forced the plaintiff to his knees, pulled down his pants, put an object described as possibly a finger up his rectum for a few seconds, and squeezed his scrotum and his penis. The plaintiff yelled for help to the best of his ability given that he was being choked.

Defendant corrections officer McCarron initially heard a muffled sound, to which he did not respond. When he heard the sound a second time, he began to search for its source. After ascertaining that the sound was not coming from the first floor, he headed to the second floor and checked the plaintiff's cell. He arrived at the cell within thirty seconds of the time the plaintiff began to scream. When he arrived, he found the door

4

closed but not secured. He opened the door and inmates Thibeault, Chaput, and Allen exited the cell. McCarron discovered the plaintiff lying in the cell, shaking, with his ankles bound and pants down. McCarron sought assistance and obtained medical care for the plaintiff. The three inmates assert that the incident was not an assault, but more horseplay like the snowball episode.

On January 2, 1995, the plaintiff brought this action alleging various violations of his rights by prison officials, asserting, inter alia, that the officials acted with deliberate indifference to his physical safety by failing to protect him from the attack. Plaintiff Evelyn Cote brought a pendent state claim for loss of consortium. The defendants have moved for summary judgment on the claims of both plaintiffs.

Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties seeking summary judgment bear the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiffs, "'indulging all reasonable inferences in [their] favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiffs "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.  Deliberate Indifference

    In count I of his complaint, the plaintiff asserts that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by acting with deliberate

6

indifference to his right to be free from assaults by other inmates. In count III, the plaintiff asserts that the defendants subjected him to "summary punishment in violation of [his] right to due process." Complaint, at 8 (document no. 1). In count X, the plaintiff alleges that the defendants conspired, in violation of federal law, to deprive him of the various rights he claims they violated. In count VII, the plaintiff alleges that defendants Donovan and Rockingham County are liable for the alleged wrongdoing of prison officials under theories of municipal liability and respondeat superior.[6] Because the plaintiff has not produced any evidence that the defendants failed to respond reasonably to the alleged sexual assault, the court understands the plaintiff's claim to assert that the defendants were deliberately indifferent in their failure to take adequate steps to prevent the assault.

The defendants claim that they are entitled to summary judgment on each of these claims because, <u>inter alia</u>, the

---

[6]The plaintiff's respondeat superior claims fail, because respondeat superior "will not attach under § 1983." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). Furthermore, "supervisory officials may be found liable only on the basis of their own acts or omissions." <u>Miranda v. Munoz</u>, 770 F.2d 255, 260 (1st Cir. 1985). Therefore, the court grants summary judgment to defendant Donovan on the plaintiff's claims in count VII and considers only the issue of the municipal liability of defendant Rockingham County.

7

plaintiff has adduced no evidence that establishes that the defendants acted with deliberate indifference to the plaintiff's safety. They point to several uncontested facts that they argue support this conclusion: the plaintiff had previously been incarcerated with inmate Thibeault for two months in 1992 without incident; he has not offered any evidence to indicate that the defendants knew or should have known that he was in immediate danger of assault by inmates Allen and Chaput; in response to the plaintiff's report that Thibeault had sexually assaulted him in 1985, defendant Hollick researched records concerning the matter and found no verification of the fact that the plaintiff had been sexually assaulted; in response to the plaintiff's report, defendant Hollick asked the plaintiff whether he felt that he was in immediate danger from inmate Thibeault and the plaintiff responded that he did not; defendant Hollick offered the plaintiff alternative placements in the facility, which the plaintiff declined; the plaintiff failed to report to prison officials his fears of an attack following the snowball incident; defendant McCarron responded promptly to terminate the alleged assault; and after the assault the defendants provided the plaintiff with medical care, detailed more fully in section III, infra. The court concludes that this evidence meets the defendants' burden of demonstrating the lack of a genuine issue

of material fact concerning their alleged deliberate indifference to the plaintiff.

Against this evidence, the plaintiff interposes his assertions that: (1) prison officials should have known of the danger to him because of the warnings given to them by him and his family and should have done more to try to prevent the assault; (2) prison officials transferred him to D-Block with the knowledge and/or intent that he would be assaulted in retaliation for his litigation activities; and (3) prison policies that could have prevented the assault were either non-existent or were not followed.[7]  The court evaluates these assertions seriatim.

The plaintiff's first claim, that prison officials were deliberately indifferent to his safety because they knew or should have known of the danger to him, is a conclusion that is belied by the plaintiff's own admissions.  It is undisputed that prison officials listened to the plaintiff's concerns about his safety prior to the alleged assault and, inter alia, offered him

---

[7]The plaintiff supports each of his assertions with the report of an "expert" who opines as to several issues contested in this case.  The report is attached as an exhibit to the plaintiff's opposition and is neither sworn to nor accompanied by a proper affidavit, so the court is under no obligation to consider it. See Fed. R. Civ. P. 56(e); Ramsay v. Cooper, 553 F.2d 237, 240 (1st Cir. 1977).  Despite this, the court considers the report in its resolution of the instant motion, accepting for the purposes of this motion the plaintiff's expert as such without making any determination on his qualifications.

9

options to protect him from an attack by Thibeault. Although the plaintiff failed to take advantage of the proffered options, the plaintiff's subjective dislike of those options does not raise a reasonable inference that the defendants were deliberately indifferent to his safety. In addition, defendant McCarron responded promptly to stop the alleged assault when it came to his attention and medical care was provided to the plaintiff after McCarron's intervention. These acts show that the defendants actively sought to provide for the plaintiff's welfare, rather than being deliberately indifferent as he has claimed. The plaintiff's expert report, which concludes that the defendants "were aware of or should have been aware of the threat that Mr. Thibeault posed" to the plaintiff, may state a claim for simple negligence. Objection to Motion for Summary Judgment, Ex. A, at 2 (document no. 18). However, given the uncontested evidence of steps taken by the defendants to respond to the plaintiff's concerns for his safety, the report fails to raise any reasonable inference that the defendants acted with deliberate indifference.

The plaintiff's second claim, that prison officials acted intentionally in retaliation for his litigation activities, would establish, if proven, that the defendants acted with deliberate indifference to his safety. However, the plaintiff offers only

10

one piece of evidence beyond his own conclusory allegation of retaliatory motive to support his claim.  He alleges defendant Vahey made a statement to him when Vahey informed him of his impending transfer to D-Block -- "We'll see what happens to you there."  The plaintiff has not contested the fact that the policy of the prison was to reassign prisoners against whom a detainer had been served to protective custody pending transfer.  He has not produced any evidence to suggest that the defendants arranged for the detainer to be filed against him as a pretext to have him reassigned.  He has admitted that he only infers a retaliatory intent from Vahey's ambiguous statement.  As discussed <u>supra</u>, he has not contested that the defendants took affirmative action both before and after the alleged assault to prevent it and to minimize its effects.  Thus, even assuming that Vahey made the statement the plaintiff has alleged, the court finds that the statement does not give rise to any reasonable inference that prison officials acted with deliberate indifference to his safety by intentionally reassigning him with the knowledge or intent that he would be assaulted.

The plaintiff's third claim is that prison policies adequate to prevent the assault did not exist or were not followed, failures that he asserts amounted to deliberate indifference to his safety.  The only evidence the plaintiff has produced in

11

support of this point is his expert report, which opines that: "policies and procedures for protective custody inmates were inadequate . . . to ensure prisoner safety," failure to "conform to the strictest application of rules and regulations . . . jeopardizes the safety and welfare of both staff and prisoners," and "[p]olicies and procedures regarding housing assignments were sketchy and failed to detail the levels of security of each housing unit and the types of prisoners to be assigned to those units."  Objection to Motion for Summary Judgment, Ex. A, at 2-3 (document no. 18).  The plaintiff has offered no evidence to raise a reasonable inference that these alleged deficiencies rise to the level of deliberate indifference.  Moreover, in order for the plaintiff to prevail on a claim against defendant Rockingham County, the plaintiff must show that "there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 386 (1989).  The report provided by the plaintiff, though it challenges the adequacy and implementation of the prison's policies, fails to establish a causal connection between the policies and the alleged harm.[8]

---

[8]In fact, the plaintiff's failure to demonstrate any causal link between the acts and omissions of the defendants and the harm that he suffered serves as an alternate ground for the dismissal of all his claims.  Any inference of a causal

12

The court finds that the plaintiff has failed to meet his burden of opposing the defendants' properly supported motion for summary judgment by showing that a trialworthy issue of material fact remains on the issue of the defendants' alleged deliberate indifference to his safety.  Therefore, the court grants summary judgment to the defendants on the plaintiff's federal claims in counts I, III, VII, and X.

II.  Denial of Freedom of Speech

In count II of his complaint, the plaintiff asserts that the challenged acts denied him freedom of speech guaranteed by the Constitution.  Specifically, he asserts that the defendants permitted the assault as a means of retaliating against him for his litigation activities, thereby depriving him of his First Amendment rights.  However, because the plaintiff has failed to demonstrate that the defendants acted with deliberate indifference to his rights by permitting the assault to occur, he necessarily has failed to demonstrate that a deprivation that could have been motivated by their intent to deprive him of his right to free speech.  Therefore, the court grants the

connection his evidence may raise is negated by his admission that he was offered alternatives which would have provided for his safety, such as being locked in his cell, which he refused.

13

defendants' motion for summary judgment on the plaintiff's federal claim in count II.

III.  Failure to Render Medical Care

In count V of his complaint, the plaintiff alleges that prison officials failed to provide him with adequate medical care after the incident, violating his rights under federal law.  The defendants assert that they are entitled to summary judgment on this claim because the plaintiff received the following medical care subsequent to the assault: immediately following the incident the prison nurse examined the plaintiff; thereafter he was taken to Exeter Hospital where he was treated and released by Dr. Neal Martin; at Exeter Hospital he conferred with representatives of Sexual Assault Support Services; upon his return to the prison he was seen by in-house counselor Helen Watkins, who treated him until his transfer to the Strafford County House of Corrections on November 23, 1992; and, after his transfer he continued to receive medical care related to the incident including care and counseling services from Dr. Jeffrey Wagner.  The court finds this evidence sufficient to meet the defendants' initial burden of showing that there exists no genuine issue of material fact with respect to the issue of timeliness and adequacy of medical treatment, shifting the burden

14

to the plaintiff to demonstrate that a genuine issue of material fact remains for trial.

However, the plaintiff has not produced any evidence beyond his conclusory allegation to suggest that the medical care provided to him following the incident was inadequate. For that reason, the court grants the defendants' motion for summary judgment with respect the plaintiff's federal claim in count V.

V. Pendent State Claims

In counts IV (privacy),[9] VI (assault and battery), VIII (negligence), IX (intentional infliction of emotional distress), and XI (loss of consortium), both plaintiffs allege violations of their rights arising solely under state law. In counts I (cruel and unusual punishment), II (denial of freedom of speech), III (statutory punishment in violation of right to due process), and V (failure to render medical care), the plaintiff alleges violations of his rights arising under both state and federal law. The court, having granted summary judgment on all of the

---

[9]The plaintiff asserts that the challenged actions deprived him of his right to privacy but does not articulate the source of that right. Because the defendants assert in their motion for summary judgment that the plaintiff's privacy claim is based on state law and the plaintiff has not opposed this characterization, the court assumes that count IV asserts a violation of a right to privacy under state law.

plaintiff's federal claims, declines to exercise pendent supplemental jurisdiction over the plaintiffs' state claims.  <u>See</u> 28 U.S.C.A. § 1367 (West 1993).

<u>Conclusion</u>

For the reasons stated above, the defendants' motion for summary judgment (document no. 16) is granted as to all the plaintiff's federal claims.  The court declines to exercise jurisdiction over the plaintiffs' claims arising under New Hampshire law.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

January 23, 1997

cc:  Brian T. Stern, Esquire
     Mark S. Gerreald, Esquire